No. 15-4040

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT

DermaPen LLC,

*Plaintiff/Counterclaim Defendant,*

v.

4EverYoung, Ltd., et al.

*Defendants/Counterclaimants/Appellees.*

And Related Counterclaims

Appeal from the United States District Court for the District of Utah
No. 2:13-cv-00729-DN-EJF

## APPELLEES' BRIEF
## ORAL ARGUMENT REQUESTED

Carla B. Oakley
carla.oakley@morganlewis.com
Robert A. Brundage
robert.brundage@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
One Market
Spear Street Tower
San Francisco, CA  94105-1596
Telephone:  +1.415.442.1000
Facsimile:    +1.415.442.1001

Attorneys for Appellees
4EverYoung Ltd., Equipmed
International Pty. Ltd., Biosoft (Aust) Pty
Limited, and Stene Marshall

DB2/ 30132001.37

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1:

Appellee 4EverYoung Limited ("4EverYoung") states that Artland Holdings Limited ("Artland") is the majority owner of 4EverYoung.  Neither Artland nor 4EverYoung is publicly held.  No publicly held corporation owns 10% or more of 4EverYoung's stock.

Appellee Equipmed International Pty Ltd. ("Equipmed") states that Artland is also the majority owner of Equipmed.  Neither Artland nor Equipmed is publicly held.  No publicly held corporation owns 10% or more of Equipmed's stock.

Appellee BioSoft (Aust) Pty Ltd. states that it has no parent corporation and no publicly held corporation owns 10% or more of its stock.

<u>s/ Robert A. Brundage</u>
Robert A. Brundage

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ...................................................................i

TABLE OF AUTHORITIES ...........................................................iv

PRIOR OR RELATED APPEALS ................................................. xii

GLOSSARY ................................................................................. xiii

I.      INTRODUCTION ...................................................................1

II.     JURISDICTION .....................................................................3

III.    STATEMENT OF THE CASE ...............................................4

    A.    Distribution Agreement.................................................4

    B.    Anderer And DPLLC's Scheme To Avoid Offering The Mark/Domain To 4EverYoung. ....................................5

    C.    Agreement Termination .................................................6

    D.    DPLLC Sues 4EverYoung; 4EverYoung Counterclaims For Specific Performance Of Obligation To Offer Mark/Domain .................................................................7

    E.    DPLLC And Anderer Roll Loans Into New Note and Security Agreement With Mark/Domain As Collateral .............7

    F.    DPLLC's Bad-Faith Bankruptcy .................................8

    G.    Anderer And DPLLC Try To Put The Mark/Domain Outside District Court's Control ................................10

        1.    Anderer's Notice of DPLLC's Default Based on The Sham Bankruptcy ....................................10

        2.    DPLCC's Confession of Judgment for Anderer............10

        3.    Anderer's State-Court Action Against DPLLC............12

        4.    DPLLC's Trademark Assignment To Anderer .............12

    H.    December TRO Against Transfer By DPLLC Or Those Acting In Concert, Including Anderer .......................12

    I.    4EverYoung Obtains Partial Summary Judgment That DPLLC Must Offer The Mark/Name to 4EverYoung..............13

## TABLE OF CONTENTS
(continued)

**Page**

J.     Conversion of TRO to Injunction Prohibiting DPLCC And Those Acting In Concert From Transferring The Trademark And Domain Name ................................................... 14

K.    Anderer's Post-Injunction Acts To Transfer An Interest in The Mark/Domain ................................................................ 14

     1.      Foreclosure on Security Interest .................................... 15

     2.      Execution of Judgment ................................................... 15

L.     February Preliminary Injunction Prohibiting Anderer From Transferring Interest In Mark/Domain Except In Connection With Lien From Debtor-in-Possession Financing; Related Orders ........................................................ 16

M.    Anderer's Foreclosure Sale ................................................... 18

N.     Anderer's Transfer Of The Mark/Domain To An Offshore Entity ................................................................................ 18

O.     Contempt Orders ................................................................... 18

     1.      Contempt of December TRO/January injunction .......... 18

     2.      Contempt of February Injunction; Alternative Remediation Order ......................................................... 22

IV.    SUMMARY OF ARGUMENT ........................................................... 23

V.    ARGUMENT ...................................................................................... 25

   A.    Jurisdiction ............................................................................ 25

     1.      December TRO/January Injunction ............................... 25

     2.      February Injunction ........................................................ 26

     3.      Order Rejecting Anderer's Anti-Injunction Act and Abstention Arguments ................................................... 26

     4.      Contempt of December TRO/January Injunction ......... 27

     5.      Contempt of February Injunction .................................. 30

   B.    The Anti-Injunction Act Does Not Bar The Injunctions. .......... 31

-ii-

**TABLE OF CONTENTS**
(continued)

**Page**

| | | | |
|---|---|---|---|
| | 1. | January Injunction | 32 |
| | 2. | February Injunction | 33 |
| | 3. | The AIA Would Not Enable Anderer To Transfer The Mark/Domain. | 35 |
| C. | | Abstention Doctrines Do Not Bar The Injunctions. | 36 |
| | 1. | Younger | 36 |
| | 2. | Colorado River | 38 |
| D. | | The District Court Did Not Abuse Its Discretion In Entering the February Injunction. | 41 |
| | 1. | Standard of Review | 41 |
| | 2. | The Court Acted Well Within Its Discretion | 44 |
| | | a. 4EverYoung Is Likely to Succeed. | 44 |
| | | (1) 2014 Documents | 45 |
| | | (2) Confession of Judgment and Trademark Assignment | 50 |
| | | b. The Court Permissibly Found 4EverYoung Would Suffer Irreparable Harm Without The Injunction. | 55 |
| | | c. The Court Permissibly Found The Balance of Harms Favors 4EverYoung. | 57 |
| | | d. The Court Did Not Abuse Its Discretion In Finding The Public Interest Favors The Injunction. | 58 |
| | | e. The Injunction Satisfies Rule 65(d) | 58 |
| E. | | The District Court Did Not Abuse Its Discretion In Holding Anderer In Contempt of The January Injunction | 61 |
| F. | | The District Court Did Not Abuse Its Discretion In Holding Anderer In Contempt of The February Injunction | 63 |
| VI. | | CONCLUSION | 65 |
| VII. | | STATEMENT RE ORAL ARGUMENT | 65 |

-iii-

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*40235 Washington St. Corp. v. Lusardi*,
   976 F.2d 587 (9th Cir. 1992) (per curiam) .......................................39

*Abbott Labs. v. Unlimited Beverages, Inc.*,
   218 F.3d 1238 (11th Cir. 2000) ........................................................64

*Airlines Reporting Corp. v. Barry*,
   825 F.2d 1220 (8th Cir. 1987) ..........................................................32

*Alley v. U.S. Dept. of Health & Human Servs.*,
   590 F.3d 1195 (11th Cir. 2009) ........................................................64

*Aptix Corp. v. Meta Sys., Inc.*,
   148 Fed.Appx. 924 (Fed. Cir. 2005).................................................47

*Atl. Coast Line R.R. v. Bhd. of Locomotive Eng'rs*,
   398 U.S. 281 (1970)...........................................................................33

*Awad v. Ziriax*,
   670 F.3d 1111 (10th Cir. 2012) ...................................................43,44

*Boynton v. Moffat Tunnel Improvement Dist.*,
   57 F.2d 772 (10th Cir. 1932) ............................................................34

*Chase Nat'l Bank v. Norwalk*,
   291 U.S. 431 (1934)...........................................................................33

*ClearOne Commc'ns., Inc. v. Bowers*,
   643 F.3d 735 (10th Cir. 2011) ..........................................................63

*Colo. River Water Conservation Dist. v. United States*,
   424 U.S. 800 (1976)....................................................................passim

*Corporation of President of Church of Jesus Christ of Latter-Day
   Saints v. Jolley*,
   467 P.2d 984 (Utah 1970).................................................................55

-iv-

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Dominion Video Satellite, Inc. v. EchoStar Satellite Corp.*,
269 F.3d 1149 (10th Cir. 2001) ...................................................41,56

*F.D.I.C. v. Four Star Holding Co.*,
178 F.3d 97 (2d Cir. 1999) .................................................................39

*Farmers' Loan & Trust Co. v. Lake St. Elevated R.R.*,
177 U.S. 51 (1900)........................................................................34,35

*Firestone Tire & Rubber Co. v. Risjord*,
449 U.S. 368 (1981)............................................................................25

*Fox v. Capital Co.*,
299 U.S. 105 (1936)............................................................................28

*Generic Farms v. Stensland*,
518 N.W.2d 800 (Iowa Ct. App. 1994) ..............................................52

*Griffith v. State of Colorado*,
17 F.3d 1323 (10th Cir. 1994) ...........................................................55

*Gulfstream Aerospace Corp. v. Mayacamas Corp.*,
485 U.S. 271 (1988)............................................................................27

*Haskell v. Kan. Natural Gas Co.*,
224 U.S. 217 (1912)........................................................................60,65

*Hatten-Gonzales v. Hyde*,
579 F.3d 1159 (10th Cir. 2009) ..........................................................30

*Haw. Hous. Auth. v. Midkiff*,
467 U.S. 229 (1984)........................................................................36,37

*Imperial County, Cal. v. Munoz*,
449 U.S. 54 (1980)..............................................................................32

*In re Abraham*,
421 F.2d 226 (5th Cir. 1970) ..............................................................34

-v-

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*In re Am. Honda Motor Co., Inc. Dealerships Relations Litig.*,
315 F.3d 417 (4th Cir. 2003) ...............................................................32

*In re Federal Skywalk Cases*,
680 F.2d 1175 (8th Cir. 1982) .............................................................27

*In re Fisker Auto. Holdings, Inc.*,
510 B.R. 55 (Bankr. D. Del. 2014), *leave to appeal denied*, No. 14-
CV-99, 2014 WL 546036 (D. Del. Feb. 7, 2014)................................56

*In re Lang*,
414 F.3d 1191 (10th Cir. 2005) ...........................................................26

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
148 F.3d 283 (3d Cir. 1998) ..................................................................4

*In Re Udell*,
18 F.3d 403 (7th Cir. 1994) .................................................................48

*In re XYZ Options, Inc.*,
154 F.3d 1262 (11th Cir. 1998) ...........................................................52

*Jacksonville Blow Pipe Co. v. Reconstruction Fin. Corp.*,
244 F.2d 394 (5th Cir. 1957) ...............................................................34

*Joseph A. v. Ingram*,
275 F.3d 1253 (10th Cir. 2002) ...........................................................36

*Lamex Foods, Inc. v. Audeliz Lebron Corp.*,
646 F.3d 100 (1st Cir. 2011)................................................................26

*Law v. NCAA*,
134 F.3d 1438 (10th Cir. 1998) ...........................................................28

*Mathis v. Huff & Puff Trucking, Inc.*,
787 F.3d 1297 (10th Cir. 2015) ...........................................................42

-vi-

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Matter of Holloway*,
955 F.2d 1008 (5th Cir. 1992) ........................................................47

*McComb v. Jacksonville Paper Co.*,
336 U.S. 187 (1949)........................................................................63

*Moore v. City of Wynnewood*,
57 F.3d 924 (10th Cir. 1995) ..........................................................31

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983)......................................................................38,39

*Navani v. Shahani*,
496 F.3d 1121 (10th Cir. 2007) ......................................................25

*New Mexico v. Trujillo*,
813 F.3d 1308 (10th Cir. 2016) ......................................................27

*O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*,
389 F.3d 973 (10th Cir. 2004) (en banc) (Murphy, J., joined by
majority), *aff'd and remanded,* 546 U.S. 418 (2006).......................43

*O'Connor v. Midwest Pipe Fabrications, Inc.*,
972 F.2d 1204 (10th Cir. 1992) ......................................................28

*Ohio Civil Rights Comm'n v. Dayton Christian Schs., Inc.*,
477 U.S. 619 (1986)........................................................................26

*Penn Gen. Casualty Co. v. Pennsylvania ex rel. Schnader*,
294 U.S. 189 (1935)........................................................................34

*Posner v. S. Paul Posner 1976 Irrevocable Family Trust*,
12 A.D.3d 177 (N.Y. App. Div. 2004) ............................................51

*Prairie Band of Potawatomi Indians v. Pierce*,
253 F.3d 1234 (10th Cir. 2001) ..............................................59,60,61

-vii-

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Price v. Wolford*,
608 F.3d 698 (10th Cir. 2010) ........................................................................3

*Princess Lida of Thurn & Taxis v. Thompson*,
305 U.S. 456 (1939).........................................................................................34

*Prudential Real Estate Affiliates, Inc. v. PPR Realty, Inc.*,
204 F.3d 867 (9th Cir. 2000) ..........................................................................32

*Rawlings v. Rawlings*,
240 P.3d 754 (Utah 2010)................................................................................55

*Reliance Ins. Co. v. Mast Constr. Co.*,
159 F.3d 1311 (10th Cir. 1998) ..................................................................60,65

*Reliance Ins. Co. v. Mast Constr. Co.*,
84 F.3d 372 (10th Cir. 1996) ..........................................................................62

*Richards v. Baum*,
914 P.2d 719 (Utah 1996)................................................................................48

*RoDa Drilling Co. v. Siegal*,
552 F.3d 1203 (10th Cir. 2009) .......................................................................42

*Rupp v. Moffo*,
358 P.3d 1060 (Utah 2015)..........................................................................46,48

*S. Ute Indian Tribe v. Leavitt*,
564 F.3d 1198 (10th Cir. 2009) ...................................................................29,31

*Schering Corp. v. Ill. Antibiotics Co.*,
62 F.3d 903 (7th Cir. 1995) .............................................................................64

*Schrier v. Univ. Of Colo.*,
427 F.3d 1253 (10th Cir. 2005) .......................................................................43

*Selvage v. J.J. Johnson & Assocs.*,
910 P.2d 1252 (Utah Ct. App. 1996)................................................................49

-viii-

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Sims v. W. Steel Co.*,
551 F.2d 811 (10th Cir. 1977) ........................................................... 3

*Smith v. Apple*,
264 U.S. 274 (1924) ........................................................................... 26

*Sprint Commc'ns, Inc. v. Jacobs*,
134 S. Ct. 584 (2013) ........................................................................ 36

*Star Fuel Marts, LLC v. Sam's E., Inc.*,
362 F.3d 639 (10th Cir. 2004) ......................................................... 44

*Tarrant Reg'l Water Dist. v. Sevenoaks*,
545 F.3d 906 (10th Cir. 2008) ......................................................... 27

*United States v. Christie Indus., Inc.*,
465 F.2d 1002 (3d Cir. 1972) ........................................................... 64

*United States v. Gonzales*,
531 F.3d 1198 (10th Cir. 2008) ....................................................... 28

*Wagner v. Anderson*,
250 P.2d 577 (Utah 1952) ................................................................. 48

*Weitzel v. Div. of Occupational & Prof'l Licensing*,
240 F.3d 871 (10th Cir. 2001) ......................................................... 37

*Williams v. United States*,
402 F.2d 47 (10th Cir. 1967) ........................................................... 60

*Younger v. Harris*,
401 U.S. 37 (1971) ..................................................................... passim

## STATUTES

11 U.S.C.
§ 364(e) ............................................................................................. 9

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

28 U.S.C.

    § 1291 ................................................................................................27

    § 1292(a)(1) ...................................................................passim

    § 1331 ..................................................................................................3

    § 1338 ..................................................................................................3

    § 1367(a) ............................................................................................3

    § 2107(a) ..........................................................................................25

    § 2283) .........................................................................................passim

Utah Code Ann.

    § 25-6-2(2) ............................................................................45,46,51

    § 25-6-2(3) .......................................................................................47

    § 25-6-2(4) .......................................................................................47

    § 25-6-2(8) ...................................................................................45,51

    § 25-6-2(12) .................................................................................45,51

    § 25-6-3(1) .......................................................................................53

    § 25-6-3(2) .......................................................................................53

    § 25-6-3(4) .................................................................................53,54

    § 25-6-5(1)(a) .................................................................................45

    § 25-6-5(2) .......................................................................................49

    § 25-6-6(2) .......................................................................................52

    § 70A-9a-610(1) ...........................................................................57

    § 70A-9a-617(1)(a) .......................................................................55

    § 70A-9a-617(2),(3) .......................................................................55

**RULES AND REGULATIONS**

Fed. R. App. P. 3(c)(1)(B) .................................................................25

Fed. R. Civ. P. 65(d) .........................................................................59

**OTHER AUTHORITIES**

Official Comment, Uniform Fraudulent Transfer Act

    § 1 cmt. 3...........................................................................................48

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

15B Wright, Miller & Cooper, *Federal Practice and Procedure* §
    3917 pp. 401-02 (1992) .........................................................................29

4 White, Summers, & Hillman, Uniform Commercial Code § 34:27
    n.2 (6th ed.) .........................................................................................56

-xi-

## PRIOR OR RELATED APPEALS

*Derma Pen, LLC v. 4Everyoung Ltd, et al.*, No. 13-4157, 773 F.3d 1117 (10th Cir. 2014).

*Derma Pen, LLC v. 4EverYoung Ltd.*, No. 13-4176 (10th Cir. May 8, 2014).

- xii -

# GLOSSARY

App. is Appellant's Appendix

AIA is Anti-Injunction Act

DIP is Debtor In Possession

DPLLC is Derma Pen LLC.

OB is Appellant's Opening Brief

Supp.App. is Appellees' Supplemental Appendix

UCC is Uniform Commercial Code

UFTA is Uniform Fraudulent Transfer Act

2014 SA is the 2014 Security Agreement between appellant Anderer and

      Derma Pen LLC.

## I.    <u>INTRODUCTION</u>

Appellant Michael Anderer is obsessed with preventing a company he controls, Derma Pen LLC ("DPLLC"), from performing its contract to offer a trademark and domain name to appellee 4EverYoung.  "'[O]ver Mike A.'s dead body" will he let 4EverYoung "take control of those assets."  App.-1468 (order granting injunction, quoting evidence).

The district court found Anderer and DPLLC did the following to hinder 4EverYoung from obtaining the trademark and domain name:  (1) Anderer took a fraudulent security interest in the trademark and domain name; (2) with Anderer's authorization, DPLLC filed bankruptcy in bad faith to try to stop 4EverYoung's lawsuit to recover them; (3) when the bankruptcy case was dismissed as bad-faith, Anderer sent DPLLC a purported notice of default (based on the bad-faith bankruptcy he had authorized) and persuaded DPLLC to transfer the trademark to him; and (4) Anderer got DPLLC's officers to sign a fraudulent confession of judgment in his favor so he could execute on DPLLC's remaining rights in the trademark and domain name.  The district court found 4EverYoung was likely to succeed on its claims that Anderer's pre-bankruptcy security interest, trademark transfer, and confession of judgment were fraudulent transfers.

To protect 4EverYoung's ability to obtain the unique trademark and domain name, the district court issued a TRO and then enjoined DPLLC and those acting

- 1 -

in concert with it, including Anderer, from further actions to transfer the trademark and domain name.  Anderer repeatedly violated the TRO and injunction.  Then the court enjoined Anderer from transferring them, except in connection with a security interest on his post-bankruptcy loan to DPLLC.  Anderer foreclosed on that security interest and bought whatever rights DPLLC still had in the trademark and domain name at the foreclosure sale, and defied the second injunction by immediately transferring them to try to put them beyond the court's reach.

The district court found "Anderer has, at all times, been in effective control of Derma Pen … that his common design and plan with his entity, Derma Pen, was to keep 4EverYoung from having access to the Trademark and Domain name; and that all of the actions that are described above created an effective strategy for him to exercise his goal."  App.-1725.  He violated both injunctions.  No wonder it held him in contempt.

Anderer appeals.  But he cannot attack the first injunction, which DPLLC consented to and no one appealed.  He timely appealed the second injunction, but his kitchen-sink attacks on it are meritless.  He cannot attack the contempt orders, which are not final; his assertions of error are also meritless.

The Court should affirm as to the second injunction and dismiss the rest of the appeal.  Alternatively it should affirm.

- 2 -

## II.  <u>JURISDICTION</u>

The district court has original jurisdiction under 28 U.S.C. §§ 1331 and 1338 over, *inter alia,* DPLLC's federal-law claims against 4EverYoung and others and 4EverYoung and a co-plaintiff's federal-law counterclaims for trademark infringement and other Lanham Act claims.  App.-230-247,1689-90,1691-95.

The district court has supplemental jurisdiction over 4EverYoung's state-law claims (App.-1679-1683,1689-90) under 28 U.S.C. § 1367(a).  The state-law claims "derive[] from a common nucleus of operative fact" with the original-jurisdiction claims.  *Price v. Wolford,* 608 F.3d 698, 702–03 (10th Cir. 2010) (internal citation omitted).  4EverYoung's counterclaim alleges, *inter alia*, that DPLLC agreed to offer to sell 4EverYoung the trademark and domain name; 4EverYoung was the trademark's equitable and beneficial owner; and Anderer, DPLLC and other counterclaim defendants have schemed to use the trademark without authorization and prevent 4EverYoung from buying the trademark and domain name.  In carrying out this scheme, they have violated federal law (trademark infringement, unfair competition, and false designation of origin), and state law (including fraudulent transfers, breach of contract, and other state-law claims).  App.-1679-90,1691-95.  Because these state-law and federal-law claims arise from a common nucleus of operative fact, they fall within § 1367(a).  *See Sims v. W. Steel Co.*, 551 F.2d 811, 819-20 (10th Cir. 1977) (state-law claims for

- 3 -

refusing to return intellectual property to plaintiff arose from common nucleus of operative fact with federal-law claims for delivering it to someone else); *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions,* 148 F.3d 283, 303 (3d Cir. 1998).

This Court has jurisdiction under 28 U.S.C. § 1292(a)(1) to review the February 2015 injunction (App.-1450) and, only as it affects that injunction, the order rejecting Anderer's Anti-Injunction Act and abstention arguments (App.-1360).  It lacks jurisdiction over the other orders.  We discuss appellate jurisdiction further after the statement of facts.  Part V.A below.

## III.    STATEMENT OF THE CASE

### A.    Distribution Agreement.

4EverYoung sells a micro-needling skin-care device and disposable tips. App.-1457,4876-77,4854,4903.  Its principal is Stene Marshall.  App.-1454.

In 2011, 4EverYoung entered into a two-year Distribution Agreement allowing DPLLC to distribute the device.  App.-1460,4571.  DPLLC applied to register the DERMAPEN trademark in the United States (the Trademark) and registered the domain name www.dermapen.com (the Domain Name).  App.-1459,4877,2784.

We refer to the Trademark and Domain Name together as the "Mark/Domain."

- 4 -

The agreement required DPLLC, upon the agreement's termination, to offer the Mark/Domain to 4EverYoung for purchase.  App.-1460,4582 § 12.2,4584 § 14.6.  If no agreement on price was reached, the assets would be valued in court. *Id.*  Jeremy Jones, DPLLC's former COO and CEO, admitted that if the agreement was valid, 4EverYoung is entitled to a valuation and opportunity to buy the Mark/Domain.  App.-1460,2889:15-19.

Appellant Anderer effectively controls DPLLC.  App.-1725.  He is a member and part-owner of DPLLC.  App.-1454,3987,3992.  He was chairman of DPLLC's board until shortly before DPLLC filed bankruptcy.  App.-1454,3992.

From 2011 through 2013, Anderer advanced money to DPLLC; he took a promissory note and security interest in 2012.  App.-1462,4567,4274-4801,1463,4568,1462,3871-73,3874-77.  All of these funds were either repaid or rolled into a subsequent note in 2014.  App.-1463,4724-4801,4662-63 (citing App.-2910:18-2918:5,3056:11-13,3067:12-14.  Anderer admitted that his current foreclosure efforts were in collection of the 2014 note, and a 2014 security agreement and debtor-in-possession loan described below.  App.-1463,1498,3530:24-3531:5.

### B.    Anderer And DPLLC's Scheme To Avoid Offering The Mark/Domain To 4EverYoung.

Anderer and DPLLC became dissatisfied with the agreement and Marshall.

- 5 -

App.-1467,4692-96,4605-08,4697-4709,4710-4713,4717-4723.  The district court

found that by September 2012, DPLLC had a "strategy for exiting the Sales

Distribution Agreement and retaining the Trademark," of which Anderer was "an

architect—if not the architect."  App.-1468,4601-03.

In September 2012, "Anderer outlined the manner in which he thought the

facts should be characterized" with respect to DPLLC's rights to the trademark.

App.-1468,4601-03.  He was responding to an email from another member of

DPLLC's board, Eric Felsted (App.-2783:8-11, 3462:24-3463:3), about a

conversation Felsted had with Marshall about the parties' rights in the event of

termination.  Marshall told Felsted that the "contract was pretty clear that he could

get the .com domains and other names back in the event of termination." Felsted

emailed:  "over Mike A.'s dead body is he going to just allow Stene to take control

of those assets."  App.-1468,4602.  Anderer, responding, did not disagree.  App.-

4601-02.

## C.    <u>Agreement Termination</u>

In May 2013, DPLLC notified 4EverYoung it was terminating the

Distribution Agreement.  App.-1466,3869.  4EverYoung requested that DPLLC

comply with its post-termination obligations, including offering the Mark/Domain

to 4EverYoung.  App.-1466-67,4593-4600.

**D.    DPLLC Sues 4EverYoung; 4EverYoung Counterclaims For Specific Performance Of Obligation To Offer Mark/Domain**

DPLLC filed this lawsuit in August 2013.  App.-1469,4593-4600.  It sought declaratory judgment that 4EverYoung has no right to buy the Mark/Domain. App.-1469-70; *see* App.-133-288.

4EverYoung counterclaimed in May 2014, alleging breach of contract, seeking damages and specific performance of DPLLC's obligation to sell the Mark/Domain.  App.-374-75.  It also alleged federal Lanham Act claims.  App.-376-77,378-80.  In May 2014, 4EverYoung moved for a TRO and preliminary injunction requiring DPLLC to specifically perform its obligation to offer the Mark/Domain to 4EverYoung for purchase.  App.-386.

In June 2014, the court set a jury trial, starting August 11, 2014, on limited issues including 4EverYoung's claim for specific performance.  App.-452-58; *see* App.-448-51.

As detailed below, Anderer and DPLLC then engaged in a multi-pronged scheme to frustrate 4EverYoung's right to buy the Mark/Domain.  *See* App.-1498-1506,1722-25.

**E.    DPLLC And Anderer Roll Loans Into New Note and Security Agreement With Mark/Domain As Collateral**

Anderer advanced additional money to DPLLC in 2014.  App.-1473-74, 3895-3901,3902-3908.  On July 1, 2014, DPLLC executed another Secured

- 7 -

Promissory Note to Anderer for over $275,000 (the "2014 Note" or "Note 3"), later increased to over $580,000. App.-1475,3883-85,3890,4569. The 2014 Note was secured with a Security Agreement of the same date (the "2014 SA"), granting Anderer a security interest in the Mark/Domain and DPLLC's other property. App.-1475,3886-3890. The district court later found DPLLC granted this security interest with the intent of hindering, delaying or defrauding 4EverYoung. App.-1498-1500.

### F.    **DPLLC's Bad-Faith Bankruptcy**

DPLLC, authorized by Anderer, filed a bankruptcy that the bankruptcy court and district court found was a bad-faith attempt to stop this lawsuit.

After 4EverYoung won multiple motions for partial summary judgment (App.-1476), and one day before trial was to start, DPLLC filed bankruptcy. App.-1476, 3895. Anderer and other members of DPLC expressly authorized this bankruptcy filing. App.-1476,3900. The bankruptcy blocked the August 11 trial and stopped the district court from entering further orders. App.-1476.

DPLLC's bankruptcy schedules showed its assets were significantly greater than its liabilities when it filed bankruptcy. App.-1479,4277. In bankruptcy, DPLLC tried to "reject" its post-termination obligations to 4EverYoung under the Distribution Agreement. App.-1477,3909-3953. DPLLC also used the bankruptcy to try to shore up Anderer's security interest, borrowing $100,000 from Anderer in

- 8 -

post-bankruptcy "Debtor in Possession" financing, governed by terms consistent with the 2014 Note and 2014 SA but with special protection under 11 U.S.C. section 364(e).  App.-1478,4447-4460 ¶¶ 5, 7-9, ¶ D; App.-3954-56.  The bankruptcy court granted additional liens to Anderer in connection with the post-bankruptcy loans.  App.-1478,4447-4460 ¶¶ 5, 7-9.  4EverYoung objected to these liens and related security interests.  The bankruptcy court reserved 4EverYoung's rights to object by December 23, 2014.  But the bankruptcy was dismissed before that deadline expired, leaving the objections unresolved.  App.-1478,4447-60 § 3,4461,4480.

On December 19, 2014, the bankruptcy court dismissed DPLLC's bankruptcy as having been filed in bad faith "as a litigation tactic, rather than as a good faith attempt to reorganize or preserve value for creditors."  App.-1479, 4478-79.  The bankruptcy judge explained that "[w]hen the Utah District Court entered preliminary rulings that were not in DPLLC's favor, DPLLC filed a bankruptcy petition."  *Id.*  "The timing of the petition, and the lack of facts demonstrating that DPLLC was in financial distress at that time, indicate that the bankruptcy petition was filed to avoid the expense of trial and the possibility of additional rulings against it."  *Id.*  "Rather than filing to assuage operational difficulties and financial stress caused by the trademark dispute, DPLLC's petition is an attempt to disrupt the litigation process. The Debtor has failed to meet its

burden that its chapter 11 petition was filed in good faith." *Id.* The district court

agreed. App.-814 ("Derma Pen filed bankruptcy to stop this case"), 1479-80,

1499-1500.

### G. Anderer And DPLLC Try To Put The Mark/Domain Outside District Court's Control

Anderer and DPLLC then used Anderer's creditor status to seize the

Mark/Domain before the court could order DPLLC to offer it to 4EverYoung.

#### 1. Anderer's Notice of DPLLC's Default Based on The Sham Bankruptcy

The day the bankruptcy was dismissed, December 19, Anderer's counsel

sent DPLLC a default notice demanding immediate payment of $687,918.82.

App.-1480,4538-39. The default notice was sent "Pursuant to Section 4(c) of the

[2012] Note." App.-4538. The only basis for default under that section was

bankruptcy or similar reorganization. App.-3872.

In other words: Anderer used the sham bankruptcy he had authorized to

declare DPLLC in default.

#### 2. DPLCC's Confession of Judgment for Anderer

DPLLC capitulated to Anderer without investigation. That same evening,

December 19, Jones conceded on behalf of DPLLC to Anderer's position. App.-

1482,4540-41.

Anderer's counsel verbally asked Jones to confess judgment on behalf of

- 10 -

DPLLC in favor of Anderer. App.-1480, 2933:3-2937:19,2951:24-2952:3. The next business day, December 22, Jones and two other DPLLC officers approved a Confession of Judgment. App.-1481,3954-56. Jones, on DPLLC's behalf, executed a $791,012.18 Confession of Judgment (including $100,000 in post-bankruptcy "Debtor-In-Possession" loans) in Anderer's favor. App.-1481,3954-55.

Jones signed this confession of judgment on December 22, without even discussing possible defenses. App.-1481,2804:12-2805:13,2930:17-2933:2. He later claimed that on December 19 he had talked for 40 minutes with DPLLC's then-lawyer, Walker, about Anderer's counsel's request for a Confession of Judgment. But Walker told the district judge that he did not even *learn* of DPLLC's intent to surrender assets to Anderer until the evening of December 22, after it had already happened. App.-1480,1749:6-14,1750:10-23. And as the district court further noted, Jones claimed that he did not perceive any defense to Anderer's claim even though he knew that in DPLLC's bankruptcy 4EverYoung had made a motion to prosecute claims on DPLLC's behalf to avoid DPLLC's obligations to Anderer. App.-1480,2952:6-24,2954:17-2955:21.

The district court found, and DPLLC's bankruptcy counsel, Walker, admitted, that the Confession of Judgment was intended to result in surrender of the Mark/Domain to Anderer. App.-801,1484,1750:7-23,1749:6-1751:2.

- 11 -

### 3.    Anderer's State-Court Action Against DPLLC

On December 22, Anderer sued DPLLC in Utah state court. App.-1481. On December 24, based on the Confession of Judgment, the state court entered a $791,012.18 judgment for Anderer against DPLLC. App.-1481,3959-61.

Anderer did not execute this judgment on the Mark/Domain. Instead, Anderer purportedly obtained the Mark/Domain by exercising self-help and foreclosing on the Mark/Domain as a secured creditor.

### 4.    DPLLC's Trademark Assignment To Anderer

On December 22, Anderer's lawyer, Saunders, emailed Jones requesting a "partial surrender of some of the secured collateral assets in favor of Mike Anderer per Article 9 of the Utah Commercial Code." App.-1482,4542. Saunders asked that DPLLC immediately record an assignment of the Trademark using the USPTO Electronic Transfer Assignment System to surrender the mark as "timely… as possible." App.-1483,4542-44. Jones did so about an hour later. App.-1482,4545-49,3957-58. An Assignment was executed and recorded with the USPTO on December 22. App.-1482,4550-52.

### H.    December TRO Against Transfer By DPLLC Or Those Acting In Concert, Including Anderer

On December 23, 4EverYoung's counsel asked the court to rule on the previously-filed motion for preliminary injunction. App.-1483. At the hearing's

- 12 -

end, the court directed 4EverYoung's counsel to submit the form of a TRO.

DPLLC's counsel did not object.  App.-1484,1755:12-13.

On December 23 the district court entered a TRO ordering that "DPLLC, its

officers, agents, servants, employees, and attorneys, and those acting in concert,

with them (collectively, the 'Enjoined Parties') shall not transfer the trademark and

domain name."  App.-755-60.  The TRO made extensive preliminary findings,

including that the "bankruptcy dismissal declares that the bankruptcy filing was a

bad faith attempt to prevent adjudication in this case," "DPLLC has consistently

resisted 4EverYoung's exercise of its rights under Sections 12.2 and 14.6 of the

Distribution Agreement," and the "Confession of Judgment is also an attempt to

evade this adjudication process by placing the trademark beyond the reach of the

court."  App.-759.

There is no dispute that Anderer learned of this TRO promptly.  The district

court found that he had learned of it through counsel by December 24 and heard

about it again at his holiday party in early January 2015.  App.-1485.

## I.    4EverYoung Obtains Partial Summary Judgment That DPLLC Must Offer The Mark/Name to 4EverYoung

At a January 6, 2015, hearing, the district court ordered partial summary

judgment that DPLLC must specifically perform its obligation to permit

4EverYoung to buy the Mark/Domain.  App.-1487; *see* App.-803-19 (written

- 13 -

order).

### J.   Conversion of TRO to Injunction Prohibiting DPLCC And Those Acting In Concert From Transferring The Trademark And Domain Name

At the January 6 hearing, DPLLC consented to the TRO being continued as a preliminary injunction.  App.-1489,1762:8-15.  The court therefore continued the TRO as a preliminary injunction, stating that paragraphs 1-4 of the TRO "will continue through the pendency of the action" and "transfer [of] the trademark domain name is forbidden."  App.-1851:6-11,816.

Anderer received notice of the January 6 Preliminary Injunction through counsel, no later than January 8.  App.-1489.  He also likely learned of it during his holiday party in early January 2015.  App.-1489.

The written order entering the January injunction was entered on January 12. App.-803.

### K.   Anderer's Post-Injunction Acts To Transfer An Interest in The Mark/Domain

Despite notice of the TRO and preliminary injunction, Anderer repeatedly violated them in taking steps to obtain the Mark/Domain by foreclosing on his security interest and (though unfruitful) executing the state-court judgment against the Mark/Domain.

- 14 -

### 1.    Foreclosure on Security Interest

On January 9, Anderer filed a UCC Financing Statement in Delaware, covering the Mark/Domain, though he already owned the Trademark by virtue of the December 22 self-help assignment.  App.-1490,3892.  The same day, he issued a notice of public sale of DPLLC and its assets, purportedly including the Trademark. The sale was scheduled for January 22.  App.-1490,3962-65.

### 2.    Execution of Judgment

On January 12, Anderer filed an Application for Writ of Execution in the state-court action, trying to insulate his self-help acquisition of the Trademark on December 22 and to obtain the Domain Name.  App.-1490,3966-75; *see* App.-3975.  The state court issued the writ the following day.  App.-1490,3976-77.  In quick succession, Anderer:  (1) executed a praecipe directing the sheriff or constable to levy on DPLLC's assets, including the Mark/Domain (App.-1490, 4553-61); (2) served on DPLLC the writ of execution and praecipe, and DPLLC executed a keeper's receipt (App.-1491,4564-65,4562); (3) issued a notice of constable sale stating the Mark/Domain were to be sold (App.-1491,4563); and (4) said (through counsel) in open court he intended to go forward with the sale of the Mark/Domain, notwithstanding the TRO and Preliminary Injunction.  App.-1721, 1882:3-12.  On January 26, 4EverYoung filed a Reply to Writ and Request for Hearing. App.-1491.

- 15 -

### L. February Preliminary Injunction Prohibiting Anderer From Transferring Interest In Mark/Domain Except In Connection With Lien From Debtor-in-Possession Financing; Related Orders

On January 21, 2015, 4EverYoung filed amended counterclaims naming Anderer and others as defendants.  App.-902.  It alleged a claim against Anderer for fraudulent transfer based on, *inter alia,* the 2014 security agreement, confession of judgment, and trademark transfer.  App.-946-49.  It also alleged that Anderer was liable for breach of contract, breach of the implied covenant of good faith and fair dealing, and federal-law claims, either directly or as an alter ego of DPLLC.  App.-944-59.[1]

The same day, the court granted 4EverYoung's request for a TRO to stop Anderer's January 22 foreclosure sale.  App.-983,1003A.

To decide whether to convert the TRO to a preliminary injunction, the district court held a multi-day hearing taking testimony from witnesses on both sides, including Anderer, Marshall, and DPLLC's Jones and Morgan.  App.-1451 (listing hearings), 1911-3613,4806-5102 (transcripts).

The court found:

- 4EverYoung was likely to succeed on its claim that the 2014 Security Agreement and the 2015 UCC-1 financing statement ("2014

---

[1] 4EverYoung subsequently filed third and fourth amended counterclaims, adding additional claims against Anderer and others. App.-1522, 1621.

- 16 -

Documents"), Confession of Judgment and Trademark Assignment were made with the intent to hinder, delay or defraud 4EverYoung's claim, and so are fraudulent transfers under the Uniform Fraudulent Transfer Act;

- Absent an injunction, 4EverYoung would be irreparably harmed by frustration of its right to purchase the Mark/Domain;

- The balance of equities favors 4EverYoung;

- The public interest would be served by an injunction.

App.-1496-1505.

The court entered a preliminary injunction enjoining Anderer from transferring any interest in the Mark/Domain except in connection with a foreclosure based on the Debtor-In-Possession ("DIP") financing. App.1377,1450. The injunctive order's expressed purpose was to "stanch[] the evolution of innovative transfer means, and avoid[] loss of control of the Mark/Domain" and prevent frustration of "4EverYoung's ability to receive its contracted right to purchase the Mark/Domain." App.-1495-96.

By contemporaneous order, the court rejected contentions by Anderer—first advanced in February 2015—that the proposed injunction was barred by the Anti-Injunction Act (28 U.S.C. § 2283), *Younger* abstention and the *Colorado River* doctrine. App.1360-76; *see* App.-1135,1147-49,1263.

- 17 -

**M.    Anderer's Foreclosure Sale.**

On February 26, Anderer conducted a foreclosure sale of DPLLC's property. App.-1729.  At that sale, Anderer purported to purchase the Mark/Domain for a credit bid of $50,000.  (App.-1729,1593; Supp.App.-47).  This purported purchase of the Trademark was not recorded with the USPTO because Anderer was, of course, already the owner of record of the Trademark.

This sale was pursuant to Anderer's security interest based on the DIP financing.  App.-1593,1881:2-1882:12; Supp.App.46-47  It was not pursuant to the state-court judgment.

**N.    Anderer's Transfer Of The Mark/Domain To An Offshore Entity**

On the same day, Anderer transferred the Mark/Domain to Dermagen International, LLC ("Dermagen"), an offshore company over which Anderer claims a minority ownership. App.-1730,1593-94; Supp.App.-0067.

**O.    Contempt Orders**

Based on Anderer's steps to seize the Mark/Domain and his transfer to Dermagen, Defendants moved to hold him in contempt of both injunctions.  The court entered written orders on April 15, 2015.  It has not imposed any definite sanction for either contempt.

**1.    Contempt of December TRO/January injunction**

As to the first TRO/injunction, found that the orders were valid, Anderer had

- 18 -

notice of them, and Anderer took actions including "preparing and filing the

Delaware UCC Financing Statement, preparing and issuing the Notice of Sale,

preparing and filing the Application for Writ of Execution, preparing and filing the

Praecipe, and preparing and issuing the Keeper's Receipt," as well as issuing the

Notice of Constable Sale and filing the return of service for the Writ of Execution.

App.-1721-25; *see* App.-1713-20 (recounting TRO, injunction and Anderer's

contumacious acts).

The court found that Anderer acted "in concert" with DPLLC and thus fell

within the injunction, he had a common plan with DPLLC to keep 4EverYoung

from obtaining the Mark/Domain, and his actions were for that purpose:

> The Court finds by clear and convincing evidence that Anderer has, at
> all times, been in effective control of DPLLC, even after his
> resignation from nominal offices; that his common design and plan
> with his entity, DPLLC, was to keep 4EverYoung from having access
> to the Trademark and Domain name; and that all of the actions that
> are described above [set forth below in this brief] created an effective
> strategy for him to exercise his goal. Clearly Anderer was acting in
> concert with DPLLC. Clearly Anderer was acting for the goal of
> doing exactly what the December 24, 2014 Temporary Restraining
> Order and January 6, 2015 Preliminary Injunction prohibited.

App.-1725.

It based this finding on overwhelming evidence:

- Since the inception of DPLLC, Anderer has been an investor, part

  owner, and director at many times.  App.-1723; p. 5 above.

- 19 -

- Anderer is the only person to provide funds to DPLLC. App.-1723, 1479.

- Anderer was consulted on DPLLC's major decisions. Except one major decision, the officers of DPLLC could not recall any decision contrary to Anderer's direction. App.-1723.

- Anderer knew of the obligations under the Distribution Agreement, knew it was highly contested in this lawsuit, and was involved in this lawsuit and the bankruptcy case. App.-1723,2717, 1459,1470,4670-72,4686-91.

- Anderer funded the bankruptcy litigation entirely. App.-1723,1477-80. The bankruptcy judge found the bankruptcy was a strategy to avoid the results of this litigation. App.-1723,4478-79.

- Anderer took the security interest intending to have another mechanism to prevent 4EverYoung from purchasing the Mark/Domain. App.-1723 (citing App.-1461-63,1473-79)

- Anderer had this knowledge, these strategies, and these purposes at all relevant times and effectuated them through DPLLC even after his resignation. App.-1723 (citing App.-1467-69,1471-73)

- Anderer demanded immediate payment in full from DPLLC

- 20 -

immediately after the bankruptcy stay was lifted. Anderer proposed documents to be executed, to which documents the nominal officers of DPLLC acquiesced.  App.-1723; Part III.G above.

- Anderer continued to associate with and have contact with, directly and through counsel, the DPLLC principals.  App.-1724 (citing App.-1455-57,1471,1480-81,1485,1489).

- Anderer said he intended to do whatever possible to bar 4EverYoung from purchasing the Mark/Domain.  App.-1724 (citing App.1467-69).

- Anderer's and DPLLC's counsel made "concurrent and largely consistent arguments" that "reflect a joint and collective effort." App.-1724.

- Anderer's Dermagen transfer further reflects Anderer's determination to effect the overall strategy, exercised through DPLLC and on his own, to ensure every barrier possible to 4EverYoung's purchase of the Mark/Domain if 4EverYoung is entitled to do so.  App.-1785.

The court found Anderer in contempt of the December TRO and January injunction.  App.-1726.  It ordered him to "compensate defendants for their costs and expenses, including reasonable attorney's fees incurred with respect to the First OSC Motion."  App.-1726.  It "reserve[d] ruling until a later time on any

- 21 -

other appropriate sanctions against Anderer." App.-1726. No definite sanction has been imposed.

### 2. Contempt of February Injunction; Alternative Remediation Order

The court also found Anderer in contempt of the February injunction. It found that he violated the injunction "by transferring the Trademark and Domain Name to Dermagen following the February 26, 2015 foreclosure sale," because the injunction "only allowed a transfer in connection with a foreclosure of the DIP Lien." App.-1731. While Anderer asserted that, after purchasing the Mark/Domain at foreclosure, he was supposedly "free, in spite of the preliminary injunction, to do whatever he wanted with the Mark/Domain," that "is not what the February 2015 Preliminary Injunction states." App.-1731. Anderer, of course, had not purchased the Trademark at foreclosure anyway; he had obtained it by a self-help transfer on December 22. Part III.G.4.

The court initially ordered Anderer to "pay a fine of $5,000 per day until he has purged himself of his contempt" by restoring the Mark/Domain to himself. App.-1732. It also ordered Anderer to pay 4EverYoung's attorney fees. *Id.* It "reserve[d] jurisdiction to impose further sanctions" and stated "[t]his is not conclusive of the remedy regarding the Second OSC Motion [*i.e.* second contempt motion]." App.-1733.

- 22 -

Anderer sought court approval for an alternative method of purging his contempt.  Supp.App.-73.  The court ordered that the daily fine "shall not commence" until after it ruled on his motion.  Supp.App.-79  It modified the contempt order to let Anderer purge his contempt by causing the Mark/Domain to be transferred to a new entity he created, provided that the new entity was subject to the same rights and restrictions as Anderer. App.-1702-05.  It provided that commencing April 1, Anderer would pay a $5000 per day fine for every day that these events had not occurred.  App.-1704.  Anderer agreed to perform these terms.  App.-1704.  He reported on March 31, 2015 that he had done so.  Supp.App.-80.  Consequently, Anderer has not been fined.  Nor has any other sanction been imposed.

## IV.  <u>SUMMARY OF ARGUMENT</u>

The Court should affirm the February injunction.  First, this case falls within the Anti-Injunction Act's (AIA's) "necessary in aid of jurisdiction" exception, under which a federal court that first acquires *in rem* or *quasi in rem* jurisdiction may enjoin competing state-court proceedings to control the same property.  The district court acquired such jurisdiction no later than May 2014, long before Anderer commenced his state-court suit.  Additionally, the AIA only prohibits stays of state-court proceedings.  Anderer acquired the Mark/Domain through non-judicial means.  The injunction against transferring property acquired outside state-

- 23 -

court proceedings does not fall within the AIA.

Second, *Younger* abstention also does not bar the injunction.   Many proceedings of substance had occurred in the federal suit before the state-court suit was commenced.  The state-court suit between Anderer and DPLLC, in which 4EverYoung's only role is to oppose execution on certain assets, also does not provide an adequate forum to resolve all issues between 4EverYoung and Anderer.

Third, *Colorado River* deference cannot apply because the state-court proceedings cannot resolve the entire dispute between 4EverYoung and Anderer. Moreover, the district court did not abuse its discretion in deciding under the multifactor *Colorado River* inquiry that the federal litigation should continue.

Fourth, the district court also did not abuse its discretion in entering the February injunction.  Its factual findings are not clearly erroneous, and fully support each prong of the test for an injunction.

The Court lacks jurisdiction to review the January injunction, which was not appealed.

The Court also lacks jurisdiction to review the contempt orders.  They are not final because, *inter alia,* no sanction has been imposed.  They also do not modify the injunctions.  Even were they reviewable, the district court did not abuse its discretion in holding Anderer in contempt given the extensive evidence supporting its findings that the injunctions were valid, Anderer knew of them, he

- 24 -

acted in concert with DPLLC (as to the January injunction) and he violated them.

## V.   **ARGUMENT**

### A.   **Jurisdiction**

The Court has jurisdiction to review the February injunction, but lacks

jurisdiction to review the January injunction and the contempt orders.

#### 1.   **December TRO/January Injunction**

The Court lacks jurisdiction to review the December TRO and January

injunction because the January injunction was not appealed.  Neither of Anderer's

notices of appeal mentions the January injunction, and both were filed more than

30 days after the written injunction was entered on January 12.  Supp.App.-69,112.

Thus they are not reviewable.  *Navani v. Shahani,* 496 F.3d 1121, 1132-33 (10th

Cir. 2007) (no jurisdiction to review appealable orders not specified in notice of

appeal); *Firestone Tire & Rubber Co. v. Risjord,* 449 U.S. 368, 379 (1981) (timely

appeal is jurisdictional); 28 U.S.C. § 2107(a) (with exceptions not relevant here,

"no appeal shall bring any … order or decree in an action … of a civil nature

before a court of appeals for review unless notice of appeal is filed, within thirty

days after the entry of such … order or decree"); Fed. R. App. Proc. 3(c)(1)(B).

Anderer appears to invite review of the December TRO and January

injunction, asserting that the "injunctive relief orders" violate the AIA, *Younger*

abstention doctrine and *Colorado River* doctrine and incorrectly calling these

- 25 -

doctrines "jurisdictional." OB 20. But the absence of jurisdiction to review the TRO and January injunction forecloses review, including of supposedly jurisdictional arguments. "[O]ur power to review any decision—including decisions involving a lower court's subject matter jurisdiction—depends on our appellate jurisdiction." *In re Lang,* 414 F.3d 1191, 1195 (10th Cir. 2005) (citation omitted). In addition, the AIA, *Younger* and *Colorado River* are not jurisdictional. *See Smith v. Apple,* 264 U.S. 274, 278-79 (1924) (Anti-Injunction Act "is not a jurisdictional statute"); *Ohio Civil Rights Comm'n v. Dayton Christian Schs., Inc.,* 477 U.S. 619, 626 (1986) (*Younger* "does not arise from lack of jurisdiction in the District Court"); *Lamex Foods, Inc. v. Audeliz Lebron Corp.,* 646 F.3d 100, 112 n.15 (1st Cir. 2011) (failure to raise *Colorado River* in district court waived issue).

Because the Court lacks jurisdiction to review the January injunction, that injunction continues to bind Anderer, acting in concert with DPLLC.

### 2.    February Injunction

This Court has jurisdiction to review the February injunction under 28 U.S.C. § 1292(a)(1).

### 3.    Order Rejecting Anderer's Anti-Injunction Act and Abstention Arguments

The order rejecting Anderer's AIA, *Younger* and *Colorado River* arguments (App.-1360-76) is not appealable. It is not final under 28 U.S.C. § 1291 nor itself

- 26 -

an injunction under 28 U.S.C. § 1292(a)(1).  Nor is it appealable as a collateral

order.  *See Tarrant Reg'l Water Dist. v. Sevenoaks,* 545 F.3d 906, 914-15 (10th

Cir. 2008) (refusal to abstain under *Younger* is not appealable); *Gulfstream*

*Aerospace Corp. v. Mayacamas Corp.,* 485 U.S. 271, 275 (1988) (same as to

*Colorado River*).

Anderer's case, *In re Federal Skywalk Cases,* 680 F.2d 1175 (8th Cir. 1982),

says nothing different.  It holds the order there appealable under § 1292(a)(1)

because the order had an injunctive effect:  prohibiting class members from settling

claims and enjoining them from pursuing state-court actions.  *Id.* at 1180.  The

order here has no such injunctive effect; it decides legal points but does not require

or prohibit anyone from doing anything.

However, the order was a predicate for the February injunction, so the Court

can review the AIA and abstention arguments to the extent they bear on the

February injunction.  *New Mexico v. Trujillo,* 813 F.3d 1308, 1320 (10th Cir.

2016).

### 4.    Contempt of December TRO/January Injunction

The Court lacks jurisdiction to review the district court's order holding

Anderer in contempt of the December TRO and January injunction.  Anderer

asserts two bases for jurisdiction, both incorrect.

He asserts that it is "immediately appealable under the non-party exception

- 27 -

to the general rule that civil contempt orders are not immediately appealable." OB

54. The contempt order here is non-final in at least three respects.

First, the district court has not imposed any sanction on Anderer for

violating the January injunction. Pp. 21-22 above. A contempt order is not final,

and hence not appealable, when the appellant has been held in contempt but no

sanction has yet been imposed. *United States v. Gonzales,* 531 F.3d 1198, 1202

(10th Cir. 2008) (citing cases).

Second, the court contemplated further proceedings, "reserv[ing] ruling until

a later time on any other appropriate sanctions against Anderer." App.-1726. A

decision is non-final, and unappealable, where "further proceedings on the merits

of the contempt determination [are] plainly contemplated." *O'Connor v. Midwest*

*Pipe Fabrications, Inc.,* 972 F.2d 1204, 1208-09 (10th Cir. 1992).

Third, Anderer cannot come within the exception for nonparties. Anderer is

a party to the litigation, and was when the contempt order was issued. App.-902

(counterclaim),1712 (contempt order). Parties cannot immediately appeal

contempt citations; review must await post-judgment appeal. *Fox v. Capital Co.,*

299 U.S. 105, 107 (1936); *Law v. NCAA,* 134 F.3d 1438, 1440 (10th Cir. 1998).

That Anderer was not a party *when the injunction was entered* is beside the point.

Non-parties are permitted to appeal immediately because of the "difficulty of

ensuring a meaningful opportunity to appeal later" and they are "less subject to the

- 28 -

temptation to seek delay by intransigence and appeal." 15B Wright, Miller & Cooper, *Federal Practice and Procedure* § 3917 pp. 401-02 (1992). Neither of these is true of someone who is a party when the contempt order is entered, and can appeal at the end of the case.

Anderer also claims, incorrectly, that the contempt order modified the injunction. OB 54-55. "Appellate courts do not have jurisdiction to review a district court order that merely interprets or clarifies, without modifying, an existing injunction." *S. Ute Indian Tribe v. Leavitt,* 564 F.3d 1198, 1209 (10th Cir. 2009); 28 U.S.C. § 1292(a)(1) (allowing appeal from, *inter alia,* order "modifying" injunction). "[I]n attempting to discern interpretation from modification, ... we should not analyze the injunction and the order in detail. To plunge into the details would collapse the jurisdictional inquiry into a decision on the merits, thwarting the purpose of § 1292(a)(1)." *Leavitt,* 563 F.3d at 1209. Rather, "the benchmark for when an order modifies an injunction is a high one." *Id.* "[W]e ask only whether the District Court's conclusion is a gross or blatant misinterpretation of the original injunction." *Id.* (citation omitted).

Here, the district court did not grossly or blatantly misinterpret the January injunction. It simply applied the injunction to the facts it found. The injunction enjoins those acting in concert with DPLLC from transferring the Mark/Domain. The court found that Anderer transferred the Mark/Domain in concert with

- 29 -

DPLLC.  Applying the injunction to the facts found by the district court leads straight to a finding of contempt.  "[C]larif[ying] that the existing prohibition applied to the specific facts presented" is not an appealable modification of the injunction.  *Hatten-Gonzales v. Hyde,* 579 F.3d 1159, 1170 (10th Cir. 2009).

Though the Court lacks jurisdiction to review the contempt order, in an abundance of caution we address Anderer's contempt argument on the merits.  Part V.E below.

### 5.     Contempt of February Injunction

The Court lacks jurisdiction to review the order holding Anderer in contempt of the February injunction.  As with the January injunction, this contempt order is not final:  Anderer is a party (and was when the February injunction was issued), the contempt order was expressly "not conclusive of the remedy" and no sanction has been imposed.

Anderer asserts that "refusal to modify" the injunction is immediately appealable under § 1292(a)(1).  OB 52-53.  Apparently he refers to the district court's denial of his March 2015 motion to modify the February injunction, filed after he had already violated the injunction.  OB 18; App.-1590,1733.  But he presents no argument that the court abused its discretion in refusing to modify the injunction.  Nor does he explain how appealing refusal to *modify* the injunction, after he had violated it, would afford jurisdiction to review an otherwise

- 30 -

unreviewable order holding him in contempt of the original injunction.

Still, Anderer says, the district court misinterpreted the injunction in holding him in contempt.  OB 53.  Again he does not clear the "high" benchmark to establish a modification.  *Leavitt,* 564 F.3d at 1209.  His argument is just a run-of-the-mill (and incorrect) argument that the injunction did not cover his conduct.  Part V.F below.  The district court's determination that Anderer's offshore transfer violated the injunction was not a "gross or blatant misinterpretation of the original injunction." *Leavitt,* 564 F.3d at 1209.  Therefore it is not appealable.

Last, Anderer asserts pendent jurisdiction.  A pendent claim is "inextricably intertwined" only if "the appellate resolution of the [proper] appeal necessarily resolves the pendent claim as well." *Moore v. City of Wynnewood,* 57 F.3d 924, 930 (10th Cir. 1995).  That is not this case.  Appellate resolution of the injunction will *not* necessarily resolve the contempt citation, so contempt does not fall within pendent jurisdiction.

Despite this lack of jurisdiction, in an abundance of caution we address Anderer's contempt argument on the merits.  Part V.F below.

## B.    The Anti-Injunction Act Does Not Bar The Injunctions.

Anderer claims that the AIA, 28 U.S.C. § 2283, bars "the injunctive relief orders."  OB 22-26.  He is incorrect as to both injunctions.

Neither injunction is specifically directed to state-court proceedings.  They

prohibit (1) DPLLC, its officers, employees, agents, and attorneys, and those

acting in concert with them from transferring the Mark/Domain or interests in

them, or (2) Anderer and those acting in concert with him from transferring the

mark and domain name except in connection with the DIP financing. Thus the

claim would have to be that the injunctions are invalid insofar as they apply to

state-court proceedings. That claim is incorrect.

### 1. January Injunction

No one raised the AIA before the January injunction; to the contrary,

DPLLC consented to the injunction. Part III.J, above. Hence, any AIA argument

is forfeited, *Airlines Reporting Corp. v. Barry,* 825 F.2d 1220, 1224-25 (8th Cir.

1987) (AIA argument forfeited because not raised below), or reviewed only for

plain error, *see In re Am. Honda Motor Co., Inc. Dealerships Relations Litig.,* 315

F.3d 417, 440 (4th Cir. 2003).

Moreover, the January injunction did not violate the AIA. The AIA does not

bar suits to enjoin enforcement of judgments by strangers to the state-court

litigation. *Imperial County, Cal. v. Munoz*, 449 U.S. 54, 59-60 (1980); *Prudential*

*Real Estate Affiliates, Inc. v. PPR Realty, Inc.,* 204 F.3d 867, 879 (9th Cir. 2000).

When the January injunction was issued, 4EverYoung was a stranger to the state-

court litigation; the state-court litigation was solely between Anderer and DPLLC.

4EverYoung had no duty to intervene; "[t]he law does not impose upon any person

- 32 -

absolutely entitled to a hearing the burden of voluntary intervention in a suit to which he is a stranger." *Chase Nat'l Bank v. Norwalk,* 291 U.S. 431, 441 (1934).

### 2.    February Injunction

As to the February injunction, the district court correctly held that this case falls within the "necessary in aid of jurisdiction" exception to the AIA.  App.-1369.  This exception applies when an injunction is "necessary to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case." *Atl. Coast Line R.R. v. Bhd. of Locomotive Eng'rs,* 398 U.S. 281, 295 (1970).  That is this case.  4EverYoung seeks specific performance of DPLLC's obligation to offer to sell the Mark/Domain to 4EverYoung.  The district court has already held that 4EverYoung is entitled to that specific performance.  App.-809-10.  Selling the Mark/Domain to persons beyond the court's control would seriously impair the court's ability to grant that relief.  App.-757 ("surrender of DPLLC's Mark/Domain to Anderer would interfere with the ability of this court to grant relief to 4EverYoung by alienating those assets").

It is, moreover, settled that the "necessary in aid of" exception applies where the federal court had *in rem* or *quasi in rem* jurisdiction before the state-court action was commenced.  Where the judgment sought requires "that the court … have possession or control of the property which is the subject of the suit in order

- 33 -

to … grant the relief sought," then the proceeding is considered *in rem* or *quasi in rem* and "the jurisdiction of one court must of necessity yield to that of the other." *Penn Gen. Casualty Co. v. Pennsylvania ex rel. Schnader*, 294 U.S. 189, 195 (1935); *Princess Lida of Thurn & Taxis v. Thompson*, 305 U.S. 456, 466 (1939) (similar); *Boynton v. Moffat Tunnel Improvement Dist.*, 57 F.2d 772, 779 (10th Cir. 1932) ("rule" is that "as between two actions *quasi in rem* the one first filed excludes the later one"). The federal court need not have "actually seized" the property. *Farmers' Loan & Trust Co. v. Lake St. Elevated R.R.,* 177 U.S. 51, 61 (1900).

That is this case. The federal and state-court proceedings seek the sale of the same assets. App.-1368. The DERMAPEN trademark rights at issue here are unique and there is only one dermapen.com domain name. Since both proceedings seek to distribute the same assets, "the jurisdiction of one court must of necessity yield to that of the other." *Penn Gen.,* 294 U.S. at 195. A federal court can enjoin state-court proceedings—including enforcement of judgment liens—attempting to control the same property. *In re Abraham,* 421 F.2d 226, 228 (5th Cir. 1970) (bankruptcy court, having ordered real estate to be sold, could enjoin enforcement of state-court judgment lien against same real estate); *Jacksonville Blow Pipe Co. v. Reconstruction Fin. Corp.,* 244 F.2d 394, 399-401 (5th Cir. 1957) (federal court could enjoin state-court suit seeking to enforce security interest against property

- 34 -

sold in federal court).  *Farmers'* held that where the federal complaint sought control, sale and distribution of a railroad, the federal court could enjoin a state-court suit competing for control over the same railroad.  177 U.S. at 62.

The district court exercised jurisdiction first.  By May 2014, when 4EverYoung counterclaimed for specific performance requiring DPLLC to offer and sell the Mark/Domain to 4EverYoung, the district court could only afford the requested relief if it had control over the Mark/Domain.  Hence, the court had constructive possession of the Mark/Domain by May 2014.  App.-1368.  The state-court action was not commenced until December.  Thus the federal court obtained jurisdiction over the Mark/Domain before the state-court action was filed. App.-1367, 1369.

### 3.    The AIA Would Not Enable Anderer To Transfer The Mark/Domain.

Even if the Anti-Injunction Act applied, it would not bar application of the injunctions.  The Act only prohibits injunctions "to stay proceedings in a State court" (absent an exception).  22 U.S.C. § 2283.  Anderer obtained the Mark/Domain based on proceedings that did *not* employ state court:  the December 22 self-help trademark assignment and UCC foreclosure based on the DIP financing.  He did not gain them by executing his state-court judgment.  In prohibiting him from transferring the Mark/Domain he obtained outside state court,

- 35 -

the injunctions do *not* "stay proceedings in a State court." 28 U.S.C. § 2283.

### C.    <u>Abstention Doctrines Do Not Bar The Injunctions.</u>

Anderer's abstention arguments as to the February injunction are equally

unavailing.

### 1.    Younger

Anderer asserts that the district court should have abstained under *Younger*

*v. Harris,* 401 U.S. 37 (1971).  The district court correctly rejected that contention.

App.-1370-74.  Its refusal to abstain is reviewed *de novo.  Joseph A. v. Ingram,*

275 F.3d 1253, 1265 (10th Cir. 2002).

*Younger* requires abstention when, *inter alia*, the federal proceedings

implicate a state's interest in enforcing the orders and judgments of its courts.

*Sprint Commc'ns, Inc. v. Jacobs,* 134 S. Ct. 584, 591 (2013).  Anderer tries, but

cannot fit within this category.

First, *Younger* applies only when state proceedings are initiated "before any

proceedings of substance on the merits have taken place in the federal court."

*Haw. Hous. Auth. v. Midkiff,* 467 U.S. 229, 237-38 (1984).  Here, proceedings of

substance on the merits had taken place.  The federal case was filed in August

2013, and 4EverYoung counterclaimed for specific performance in early May

2014.  Anderer did not commence the state-court proceeding until December 2014.

The federal proceedings had been going for 18 months, and 4EverYoung's

- 36 -

counterclaim for 7 months, before the state-court suit was commenced. The federal action involved numerous proceedings on the merits, with trial set for August 11, 2014, on certain issues. The court had ruled on multiple motions in limine leading up to the trial. App.-1373.

Further, "[a] federal court action in which a preliminary injunction is granted has proceeded well beyond the 'embryonic stage' [citation] and considerations of economy, equity, and federalism counsel against *Younger* abstention at that point." *Midkiff,* 467 U.S. at 238. That is this case: the first time anyone mentioned *Younger* was February 10, 2015 (App.-1147), over a month after the first preliminary injunction had been entered.

Second, *Younger* does not apply because the state-court proceeding did not provide "an adequate forum to hear the claims raised in the federal complaint." *Weitzel v. Div. of Occupational & Prof'l Licensing,* 240 F.3d 871, 873 (10th Cir. 2001). The state-court litigation was Anderer's suit against DPLLC, based on the confession of judgment. The only issue 4EverYoung could raise was the propriety of Anderer's satisfying that judgment by executing against the Mark/Domain. There was no occasion to examine the validity of Anderer's other track for obtaining the Mark/Domain: his self-help assignment of the Trademark and the UCC foreclosure on his security interest. There was also no occasion to resolve 4EverYoung's numerous other claims against Anderer, including the alter ego and

- 37 -

conspiracy claims to hold him liable for DPLLC's breach of contract.  App.-944-59.

Third, *Younger* abstention would not relieve Anderer of the injunctions here. As discussed in Parts III.G.4 and III.M, he obtained the Mark/Domain through self-help and non-judicial foreclosure.  He did not obtain them through enforcing a state-court judgment, so *Younger* does not apply to the injunctions currently restraining him from transferring the assets.

### 2.    Colorado River

Anderer gets no further trying to invoke *Colorado River*.  The district court's decision not to defer to the state court is reviewed only for abuse of discretion. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 19 (1983). Only "exceptional" circumstances permit federal courts to decline the "virtually unflagging obligation … to exercise the jurisdiction given them."  *Colo. River Water Conservation Dist. v. United States,* 424 U.S. 800, 813, 817 (1976).  The district court did not abuse its discretion in ruling that *Colorado River* deferral does not apply. App.-1374-75.

*Colorado River* applies only when "parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties."  *Moses H. Cone,* 460 U.S. at 28.  "[T]he decision to invoke *Colorado River* necessarily contemplates that the federal court will have nothing further to

do in resolving any substantive part of the case…." *Id.* Here, the state-court case cannot resolve all issues between 4EverYoung and Anderer. The state-court proceedings initiated by Anderer are limited to Anderer's obtaining and executing on a judgment against DPLLC. Whether or not the state court allowed Anderer to execute on the Mark/Domain, it would not resolve 4EverYoung's other claims against Anderer, such as breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, conspiracy, and various Lanham Act claims. App.-944-59. That inability of the state-court action to completely resolve the issues between 4EverYoung and Anderer is dispositive. *Moses H. Cone,* 460 U.S. at 28.

Even beyond that, the district court acted within its discretion under *Colorado River*. *See Moses H. Cone,* 460 U.S. at 15-16, 23-26 (listing eight factors).

Factor (1) is which court first assumed jurisdiction over property. Here, the federal court "first assumed jurisdiction over the property [i.e., the Mark/Domain]." App.-1375. Where the federal court first assumes jurisdiction, this factor is dispositive. *See F.D.I.C. v. Four Star Holding Co.,* 178 F.3d 97, 101 (2d Cir. 1999) ("[T]he first prong of the Colorado River analysis is dispositive[.]"); *40235 Washington St. Corp. v. Lusardi*, 976 F.2d 587, 589 (9th Cir. 1992) (per curiam) (same).

- 39 -

The remaining factors also weigh against abstention. As to factor (2), the federal forum is equally convenient as is the state forum. Both are in Salt Lake City.

As for factor (3), the court permissibly found that the desirability of avoiding piecemeal litigation weighs in favor of the federal proceeding, which has been pending for over a year and a half.  The court concluded that any potential problem of inconsistent judgments could be obviated through res judicata if one court rendered judgment before the other, even if the parties and issues were identical. In fact, they are not identical.  The state-court case is Anderer suing DPLLC (App.-1481) and involves 4EverYoung only as to Anderer's attempt to execute against the Mark/Domain.  4EverYoung's federal-court complaint against Anderer involves issues well beyond those involved in the state-court case, such as whether Anderer is liable on 4EverYoung's contract, trademark, unfair competition and other claims.  App.-944-59,1375.

As to factor (4), the district court correctly found that it assumed jurisdiction first.  App.-1367-68,1375.

As to factor (5), the district court permissibly found the state-court action reactive. Anderer was keenly aware of this litigation and the trial set in August 2014.  As trial approached, the district court granted 4EverYoung's summary-judgment motion on DPLLC's claim for Distribution Agreement.  On the eve of

- 40 -

trial, DPLLC filed its bad-faith bankruptcy action.  When it was dismissed,

Anderer immediately tried to prevent this court from adjudicating the parties'

contractual obligations.  The court found that "[o]n these facts, the State Court

Action is vexatious." App.-1375.

As to the remaining factors, the court found that while federal law does not

provide the rule of decision, 4EverYoung has not suggested that the state court

action is inadequate to protect its rights, and 4EverYoung has not engaged in any

impermissible forum shopping.  App.-1375.  In balancing the factors as applied to

this case, the balance weighs heavily in favor of this court's exercise of jurisdiction.

App.-1375-76.

### D.  <u>The District Court Did Not Abuse Its Discretion In Entering the February Injunction.</u>

Anderer launches a kitchen-sink attack on the February injunction, disputing

without success every prong of the test for issuing an injunction.

#### 1.    Standard of Review

This Court reviews a preliminary injunction for abuse of discretion.

*Dominion Video Satellite, Inc. v. EchoStar Satellite Corp.,* 269 F.3d 1149, 1153

(10th Cir. 2001).  A district court abuses its discretion if it "commits an error of

law, or is clearly erroneous in its preliminary factual findings."  *Id.*

The district court's injunction order is supported by detailed factual findings

- 41 -

and extensive evidentiary support.  Those findings control:  Anderer does not claim they are clearly erroneous, nor could such a claim succeed.  "A finding of fact is clearly erroneous if it is without factual support in the record or if, after reviewing all the evidence, we are left with a definite and firm conviction that a mistake has been made.… [W]e view the evidence in the light most favorable to the district court's ruling and must uphold any district court finding that is permissible in light of the evidence." *Mathis v. Huff & Puff Trucking, Inc.,* 787 F.3d 1297, 1305 (10th Cir. 2015).

The standard for abuse of discretion is also lenient:  "an arbitrary, capricious, whimsical, or manifestly unreasonable judgment," a famously "high" standard.  *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1208 (10th Cir. 2009) (citation omitted).

Contrary to Anderer's repeated assertion, nothing requires clear and convincing evidence to support an injunction.  OB 19, 35.  Anderer's sole case cited for that proposition, *RoDa,* does not so much as mention clear and convincing evidence.

Anderer is also wrong in trying to invoke the heightened standard for injunctions modifying the status quo.  OB 36.  Even when it applies, the heightened showing does not affect the irreparable injury and public interest factors.  *Awad v. Ziriax,* 670 F.3d 1111, 1126 (10th Cir. 2012).  And it does not

- 42 -

apply here. The status quo is "the last uncontested status between the parties which preceded the controversy until the outcome of the final hearing." *Schrier v. Univ. Of Colo.,* 427 F.3d 1253, 1260 (10th Cir. 2005). It "is defined by the reality of the existing status and relationships between the parties, regardless of whether the existing status and relationships may ultimately be found to be in accord or not in accord with the parties' legal rights." *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 981 (10th Cir. 2004) (en banc) (Murphy, J., joined by majority) (citation omitted), *aff'd and remanded,* 546 U.S. 418 (2006). Here, the last uncontested status preceding the controversy was that DPLLC possessed the Mark/Domain. That status became contested no later than May 2014, when 4EverYoung moved for a preliminary injunction requiring DPLLC to specifically perform its obligation to tender the Mark/Domain to 4EverYoung. App.-386. It predates by several months the December 2014 self-help trademark assignment to Anderer, DPLLC's confession of judgment, Anderer's initiation of the state-court suit against DPLLC, and his purported January 2015 foreclosure on the Mark/Domain. It also predates the liens relied on in Anderer's brief, which arose by virtue of loans in July and August 2014. *See* OB 8 (referring to bankruptcy court order establishing lien); App.-4449 ¶ 1, 4451-52 ¶¶ C.1-3, 4454 (order, dated October 2014; approving liens for secured notes dated July and August 2014). The order enjoining Anderer from transferring the Mark/Domain

- 43 -

sought to maintain the status quo, not change it. Hence heightened scrutiny does not apply.

### 2. The Court Acted Well Within Its Discretion.

The district court did not abuse its discretion. A party seeking a preliminary injunction must demonstrate that: "(1) [it] is substantially likely to succeed on the merits; (2) [it] will suffer irreparable injury if the injunction is denied; (3) [its] threatened injury outweighs the injury the opposing party will suffer under the injunction; and (4) the injunction would not be adverse to the public interest." *Awad,* 670 F.3d at 1125. "[W]here the moving party has established that the three 'harm' factors tip decidedly in its favor, the 'probability of success' requirement is relaxed.' In such cases, '[t]he movant need only show questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation.'" *Star Fuel Marts, LLC v. Sam's E., Inc.,* 362 F.3d 639, 653 (10th Cir. 2004). All four factors are met here.

### a. 4EverYoung Is Likely to Succeed.

The district court did not abuse its discretion in finding that 4EverYoung was likely to succeed on its claim that the 2014 Security Agreement and the 2015 UCC-1 financing statement ("2014 Documents"), confession of judgment and trademark assignment were made with the intent to hinder, delay or defraud, and are fraudulent transfers. App.-1496-1505.

- 44 -

## (1)   **2014 Documents**

The court found 4EverYoung likely to succeed on its claim that the 2014

Documents were an actual fraudulent transfer under Utah Code Ann. § 25-6-

5(1)(a) (actual fraud).  App.- 1498-1501.  To establish this claim, 4EverYoung

must establish: (i) it has a claim that arose either before or after the transfer was

made or the obligation was incurred, and (ii) the transfer was made with actual

intent to hinder, delay, or defraud any creditor of the debtor.  Utah Code Ann.

§ 25-6-5(1)(a).

The district court reasonably concluded that 4EverYoung was likely to

establish each element of the claim.

First, DPLLC's granting of the 2014 security interest to Anderer was a

"transfer."  The UFTA defines transfer as "every mode … of disposing of or

parting with … an interest in an Asset, and includes … creation of a lien…."  Utah

Code Ann. § 25-6-2(12).  "Asset" means "property of a debtor."  § 25-6-2(2).  A

security interest is a "lien." Utah Code Ann. § 25-6-2(8).  The 2014 agreement

created a security interest ("creation of a lien") in the Mark/Domain ("property of

[the] debtor"), and thereby effected a "transfer."  That transfer was fraudulent and

invalid if, as the court found here, the other elements are also present.

Anderer asserts creation of his lien cannot be a transfer because the UFTA

defines transfer as disposition of an interest in an "Asset" and "Asset" excludes

"property to the extent it is encumbered by a valid lien." § 25-6-2(2)(a) (emphasis added); *see* OB 37-38, 40. That assertion fails for three reasons. One, it is inconsistent with the statute's plain language that creation of a security interest is a "transfer" that can be avoided if fraudulent. Two, only a "valid" lien excludes property from the definition of Asset. § 25-6-2(2)(a). When the lien's creation is a fraudulent transfer, as here, the lien is not valid because the UFTA invalidates it. Three, the "lien" referred to in the definition of "Asset" is a *pre-existing* lien, not the lien *created* by the very transfer in question. The Utah Supreme Court confirms this in *Rupp v. Moffo,* 358 P.3d 1060 (Utah 2015). As *Rupp* explains, the UFTA excludes property encumbered by a valid lien from the definition of an Asset because no creditor is harmed by transfer of property that is fully covered by someone else's security interest. The reasoning behind this provision "applies in the context of *property that is* fully *encumbered by a valid lien*. When *such property is transferred*, there is no harm done to either the creditor holding the lien—the secured creditor—or any other unsecured creditor of the debtor." *Id.* at 1064 (emphasis added). This reasoning only applies to encumbrances that exist at the time of transfer. If the property was not already fully unencumbered and the transfer *creates* or *expands* a security interest, the transfer *can* harm an unsecured creditor. Before the transfer, the unsecured creditor could recover the debt by proceeding against the property; after the transfer, it cannot because the property is

- 46 -

subject to someone else's security interest.

In a different spin on the same argument, Anderer seeks refuge in the provision that a transfer is not voidable "*if the transfer results from ...* (b) enforcement of a security interest" under the Uniform Commercial Code. OB 40-41 (quoting § 25-6-9(5)) (emphasis added). But the "transfer" the district court found likely fraudulent is creation of the security interest (not the later foreclosure). The fraudulent *creation* of the security interest does not result from *enforcement* of any security interest.

The cases confirm that grant of a security interest can be a fraudulent transfer. *See Aptix Corp. v. Meta Sys., Inc.*, 148 Fed.Appx. 924, 930 (Fed. Cir. 2005) (security interest was a fraudulent transfer); *Matter of Holloway*, 955 F.2d 1008, 1008 (5th Cir. 1992) (security interest to an insider "is voidable as a fraudulent conveyance.").

<u>Second</u>, at the time of the transfer, 4EverYoung was a creditor and DPLLC was a debtor. App.-1499, 1195-1201. "'Creditor' means a person who has a claim"; "claim" means a right to payment, whether or not reduced to judgment, liquidated, contingent, matured, equitable, or secured. Utah Code Ann. §§ 25-6-2(4), 25-6-2(3). 4EverYoung's breach of contract claim is a "claim": 4EverYoung seeks damages, App.-374-75,1678, and its claim for specific performance also includes an alternative right to damages. "[W]here a plaintiff seeks specific

- 47 -

performance of a contract and that relief is not available, the trial court may grant monetary damages for breach of contract." *Richards v. Baum*, 914 P.2d 719, 721 (Utah 1996); *Wagner v. Anderson*, 250 P.2d 577, 580 (Utah 1952) (court can award specific performance and damages for same breach of contract). That a specific-performance claim is a "claim" is confirmed by the bankruptcy meaning of "claim." *See Rupp,* 358 P.3d at 1063 (borrowing bankruptcy law to interpret definitions of "claim" and "creditor" under UFTA); Official Comment, Uniform Fraudulent Transfer Act § 1 cmt. 3 ("The definition of 'claim' is derived from § 101(4) of the Bankruptcy Code."). In bankruptcy, an equitable remedy will "give rise to a right of payment" and so a "claim," when monetary damages are an alternative to the equitable remedy. *E.g., In Re Udell*, 18 F.3d 403, 407 (7th Cir. 1994) (holding "one example of a 'claim' under the Bankruptcy Code is a right to an equitable remedy that can be satisfied by an 'alternative' right to payment").

Anderer's contrary argument is wrong. Citing nothing, he asserts that 4EverYoung has no right to payment because 4EverYoung seeks specific performance. OB 39. But as already seen, 4EverYoung also seeks damages, and a right to specific performance is moreover a "claim" where there is an alternative request for money damages, as here. Anderer also says that if 4EverYoung bought the Mark/Domain, it would have to pay (not receive payment) for them. OB 39. That misunderstands the nature of the "claim" under the UFTA. The "claim" is not

- 48 -

the possibility of specific performance, but the additional or alternative right to recover damages—which 4EverYoung would receive.

Third, the court found 4EverYoung was likely to prove that DPLLC made the transfer with actual intent to hinder, delay, or defraud 4EverYoung. App.-1499-1500. Anderer asserts in passing that there is "no evidence of actual fraud." OB 42. But he does not address the district court's reasons for finding 4EverYoung was likely to succeed on this claim—let alone show they are clearly erroneous. Whether the transfer was made with actual intent to hinder, delay, or defraud 4EverYoung is a question of fact, "which may be inferred from all of the attendant circumstances." *Selvage v. J.J. Johnson & Assocs.,* 910 P.2d 1252, 1262 (Utah Ct. App. 1996).

The district court reasonably found that DPLLC's intent was established through the badges of fraud laid out in Utah Code Ann. § 25-6-5(2). *See* App.-1497,1498-1500. Among them: It is undisputed that Anderer is an insider. App.-1454,3992. DPLLC maintained control of the Mark/Domain after the 2014 security agreement (transfer); it had the Trademark until assigning it to Anderer December 22 and the Domain Name until Anderer foreclosed in 2015. *See* Parts III.G.4, III.M. That transfer was not made known by concurrent filing of UCC-1 financing statement and 4EverYoung was not aware of it until DPLLC filed for bankruptcy. App.-1499; *see* App.-4452 (bankruptcy filing relying on 2013 UCC-

- 49 -

1).  4EverYoung's counterclaims, filed in May 2014, were pending at the time of the transfer.  *See* App.-3886 (security agreement was dated July 2014).  The 2014 Security Agreement covered substantially all of DPLLC's assets.  App.-3889.  DPLLC became insolvent shortly after the transfer was made; DPLLC was presumed insolvent because it was unable to pay its attorneys' fees as they became due and had to borrow money to make payments.  Pp. 53-54 below.  The 2014 Documents were executed in contemplation of impending trial in this case, and were executed in very close proximity to DPLLC's sham bankruptcy filing to avoid litigation.  App.-1499; Parts III.D-F above.  The court reasonably concluded that in viewing all of the circumstances and badges of fraud surrounding the 2014 Documents, 4EverYoung is likely to establish by clear and convincing evidence DPLLC's intent to defraud 4EverYoung.  App.-1498-1500.

### (2)    Confession of Judgment and Trademark Assignment

The district court also did not abuse its discretion in finding that 4EverYoung was likely to prove that the Confession of Judgment and Trademark Assignment were both actual fraud and constructive fraud under the UFTA.

### (a)    Actual Fraud

The elements of actual fraud are set forth at page 45 above.  The district court reasonably found that 4EverYoung was likely to satisfy them.

- 50 -

The December 22 Trademark Assignment was a transfer: the assignment "dispos[ed] of or part[ed] with … an interest in an Asset," Utah Code Ann. § 25-6-2(12), namely the trademark, which was "property of [the] debtor." § 25-6-2(2). Anderer incorrectly asserts that the assignment was not a transfer because the trademark was supposedly "encumbered by a valid lien," it was therefore not an "Asset," so assignment of it was not a "transfer." OB 40. That argument falls with his incorrect assertion that his security interest was not a transfer. As discussed in Part V.D.2.a(1), the trial court found that 4EverYoung was likely to prove that Anderer's security interest was an invalid fraudulent transfer. Thus the trademark was not encumbered by a *valid* lien. The invalid lien cannot prevent the trademark assignment from being a transfer.

The confession of judgment was also a transfer. By agreeing to have judgment taken against it, DPLLC assured Anderer would have a judgment lien. That judgment lien was a "lien" under § 25-6-2(8), and "creation of" that lien was thus a "transfer" under § 25-6-2(12). Cases confirm that confession of judgment is a transfer under the UFTA. *See e.g.*, *Posner v. S. Paul Posner 1976 Irrevocable Family Trust*, 12 A.D.3d 177, 178-79 (N.Y. App. Div. 2004) (confession of judgment was set aside as a fraudulent transfer); *In re XYZ Options, Inc.,* 154 F.3d 1262, 1269 (11th Cir. 1998) (consent judgment); *Generic Farms v. Stensland*, 518 N.W.2d 800, 802-03 (Iowa Ct. App. 1994).

- 51 -

At the time of the transfers, 4EverYoung was a creditor and DPLLC was a debtor, as detailed above.  Pp. 47-48 above.

Further, the court reasonably relied on the UFTA statutory badges of fraud to find that that 4EverYoung was likely to prove DPLLC's actual intent to hinder, delay, or defraud 4EverYoung.  Pp. 49-50 above; App.-1502-03.

(b)    <strong>Constructive Fraud</strong>

As to constructive fraud, 4EverYoung must establish that: (i) its claim arose before the transfer; (ii) the transfer was made to an insider, (iii) for an antecedent debt; (iii) the debtor was insolvent at the time; and (iv) the insider had reasonable cause to believe that the debtor was insolvent.  Utah Code Ann. § 25-6-6(2).  The court did not abuse its discretion in finding that 4EverYoung was likely to establish each element.

As already detailed, the court permissibly found that the confession of judgment and trademark assignment were "transfers."  4EverYoung's claim against DPLLC had arisen before the transfers were made:  4EverYoung sued DPLLC in May 2014, while the confession of judgment and trademark assignment were in December 2014.  At the time of the transfers, Anderer was undisputedly an insider. The transfers were made pursuant to DPLLC's antecedent debt from the 2014 Documents and the DIP lien. App.-1504.

Further, the court permissibly found DPLLC was insolvent when the

- 52 -

transfers were made.  App.-1499.  First, DPLLC was not paying its attorney fees as they became due, raising a presumption of insolvency.  § 25-6-3(2).  App.-1504. In September 2014, DPLLC's district-court attorneys moved to withdraw because they had not been paid over $400,000, DPLLC "has not filed any plan to pay the debt" and DPLLC had informed them "it does not have the financial resources" to ensure they would be paid for continued work.  Supp.App.-1  By October DPLLC still had not paid for over $450,000 for pre-bankruptcy services.  Supp.App.-10-12 DPLLC's other district-court law firm also moved to withdraw, saying DPLLC owed it $279,000 and it "has not been paid anything."  Supp.App.29  Second, a debtor is insolvent "if the sum of the debtor's debts is greater than all of the debtor's assets at a fair valuation."  Utah Code Ann. § 25-6-3(1).  Assets "do not include property that has been transferred, concealed, or removed with intent to hinder, delay, or defraud creditors or that has been transferred in a manner making the transfer voidable under this chapter."  § 25-6-3(4).  The district court permissibly found that the grant of Anderer's security interest transferred the Mark/Domain with intent to hinder, delay or defraud creditors or in a manner making the transfer voidable.  App.-1498-1500; pp. 49-50 above.  Thus the Mark/Domain do not qualify as assets in determining DPLLC's solvency, under § 25-6-3(4).  Excluding them, DPLLC's assets at bankruptcy were $203,011.97, far less than its liabilities of $1,712,883.36.  *See* App.-4277 (summary of assets and

- 53 -

liabilities).  Thus it was insolvent.

Anderer's contrary arguments are wrong.  He asserts that DPLLC was solvent at the time the transfers were made (*i.e.* at the time of the confession of judgment and trademark assignment) because the bankruptcy schedules supposedly attested that DPLLC was not insolvent.  OB 41.  But as just explained, those schedules show it *was* insolvent with the Mark/Domain excluded, as they must be under the UFTA.  Citing nothing, he also asserts that DPLLC was paying its debts as they became due.  OB 41.  But the district court found it was not (App.-1504), a finding amply supported by the withdrawal motions of DPLLC's attorneys saying they had not been paid.  Anderer also says the bankruptcy court found that "except for rising litigation costs," there was no indication of financial stress.  But under UFTA's specific tests for insolvency, DPLLC was insolvent.

Anderer asserts that the evidence does not support alter ego liability.  OB 43-44.  4EverYoung alleges alter ego liability, but did not and does not rely on it to support the injunction.[2]

---

[2] Anderer's UFTA arguments would also not avail him even if true, for a separate reason.  This Court may affirm on a ground not presented to the district court if the record is clear and the parties have had an opportunity to develop a record.  *Griffith v. State of Colorado,* 17 F.3d 1323, 1328 (10th Cir. 1994).  Here, the facts already found by the district court establish a constructive trust.  A constructive trust arises "where a person holding title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it...." *Rawlings v. Rawlings*, 240 P.3d 754, 762 (Utah 2010).  That is this

- 54 -

**b.    The Court Permissibly Found 4EverYoung Would Suffer Irreparable Harm Without The Injunction.**

"A plaintiff suffers irreparable injury when the court would be unable to grant an effective monetary remedy after a full trial because such damages would be inadequate or difficult to ascertain." *Dominion Video Satellite, Inc. v. EchoStar Satellite Corp.,* 269 F.3d 1149, 1156 (10th Cir. 2001). That is this case. The

---

case. First, 4EverYoung has obtained partial summary judgment that DPLLC is under an equitable duty to offer to convey the Mark/Domain to 4EverYoung. App.-803-19 (granting partial summary judgment on specific performance). Second, the elements of unjust enrichment are present. Unjust enrichment requires (1) a benefit conferred on one person by another; (2) appreciation or knowledge by the conferee of the benefit; and (3) acceptance or retention by the conferee of the benefit under circumstances making it inequitable to retain the benefit without payment of its value. *Rawlings,* 240 P.3d at 762; *see* App.-1683-84 (4EverYoung's unjust-enrichment counterclaim). The facts found by the court establish these elements. 4EverYoung conferred a benefit on DPLLC when DPLLC failed to tender the Mark/Domain to DPLLC as required. DPLLC knows of the benefit; 4EverYoung requested DPLLC's performance and DPLLC refused. Part III.C,D above. Retention of the Mark/Domain is inequitable in a setting where DPLLC's very design was to frustrate 4EverYoung's rights and 4EverYoung has received summary judgment that it is entitled to specific performance. App.-1725, 803-19.

DPLLC's equitable duty to convey and unjust enrichment establish a constructive trust. *Rawlings,* 240 P.3d at 762. This constructive trust followed the Mark/Domain into Anderer's hands. *Corporation of President of Church of Jesus Christ of Latter-Day Saints v. Jolley,* 467 P.2d 984, 985 (Utah 1970) (constructive trust follows property unless recipient is bona fide purchaser for value). Indeed, the transferee at a UCC foreclosure sale obtains only "the debtor's rights in the collateral." Utah Code Ann. § 70A-9a-617(1)(a). Since DPLLC's rights were subject to constructive trust, so are Anderer's as purchaser. A transferee, like Anderer, who is not in good faith takes subject even to the debtor's rights. Utah Code Ann. § 70A-9a-617(2),(3).

- 55 -

district court found that 4EverYoung faces irreparable loss if the Mark/Domain
were transferred outside of the control of the district court. 4EverYoung showed
that Anderer would likely proceed with the sale if not enjoined (which he did).
Anderer would be able to credit bid nearly $2 million. 4EverYoung's ability to
receive its contracted right to purchase the Domain Name would be frustrated.
App.-1494-95.[3]

Anderer does not dispute any of that. Instead he asserts that 4EverYoung
had an adequate remedy at law because it ostensibly could have bid at Anderer's
UCC foreclosure auction. OB 45-46. The district court was not compelled to
accept that argument. Anderer's ability to credit bid[4] nearly $2 million owed to
him by DPLLC (App.-1495) meant that he could bid $2 million at effectively no
cost; 4EverYoung would have had to match that bid with actual money. As
Anderer admits, 4EverYoung's valuation of the Mark/Domain together is about

---

[3] Since the Trademark was assigned to Anderer on December 22, 2014, the DIP
financing foreclosure could not have impacted that asset. That assignment
included not only the Trademark, but all rights to sue for past damages for
infringement of the Trademark, retaining no rights in DPLLC.

[4] When collateral is sold at a foreclosure auction, a secured creditor can "credit
bid," using its claim instead of money to bid. *See* 4 White, Summers, & Hillman,
Uniform Commercial Code § 34:27 n.2 (6th ed.) ("Nothing in Article 9 deters a
secured party from "credit-bidding" under 9-610"); *In re Fisker Auto. Holdings,
Inc.*, 510 B.R. 55, 60 (Bankr. D. Del. 2014), *leave to appeal denied*, No. 14-CV-
99, 2014 WL 546036 (D. Del. Feb. 7, 2014)(describing credit bids in bankruptcy
setting).

- 56 -

$353,000.  App.-1511.  To preserve its right to the Domain Name (and the Trademark if DPLLC owned it), 4EverYoung would have had to prevail against Anderer's credit bidding and likely pay multiple times its value.

### c. The Court Permissibly Found The Balance of Harms Favors 4EverYoung.

The court also did not abuse its discretion in determining that the balance of harms favors 4EverYoung.  As explained, 4EverYoung was entitled the unique Mark/Domain.  It would not be able to recover them if Anderer sold them to a party outside the court's control.  In contrast, Anderer's legal entitlement was purely monetary:  satisfying DPLLC's alleged debt to him.  *See* Utah Code § 70A-9a-610(1) (disposition of collateral by sale, licensing or other means), -615(1) (application of cash proceeds of disposition).  The district court reasonably concluded that "the balance of harm from the loss of the Mark/Domain would fall more heavily on 4EverYoung."  App.-1496.

Anderer responds by asserting again that he is entitled to priority as a secured creditor.  OB 47-48.  Anderer, however, cannot explain why being a secured creditor would compel the district court to find the balance of harms tilts toward him.  Being a secured creditor does not change the nature of his interest:  he is still trying to collect a monetary debt.  Anderer's reliance on being a secured creditor also remains wrong for the reason already discussed:  the district court

- 57 -

permissibly found that 4EverYoung is likely to succeed in proving that Anderer's security interest is invalid.  Part V.D.2.a.(1) above.

### d. The Court Did Not Abuse Its Discretion In Finding The Public Interest Favors The Injunction.

The district court reasonably found that the public interest favors 4EverYoung.  App.-1496.  The public undeniably has an interest in avoidance of transfers that hinder, delay or defraud creditors.  That is the whole reason for the UFTA.  The public also has an interest in having parties comply with agreements that were freely negotiated, such as 4EverYoung's right to purchase.  App.-1496.  While the public has an interest in the soundness of secured transactions, as the court recognized (*id.*), that interest is diminished since the court found it likely that Anderer's security interest was invalid.

Anderer's brief merely quarrels with the district court's exercise of discretion.  His argument repeats his secured-creditor-trumps-unsecured and AIA arguments.  OB 49.  They remain false for the reasons already stated.  Anderer's arguments do not show any clear error of fact, mistake of law, or arbitrary decision.  They show no abuse of discretion.

### e. The Injunction Satisfies Rule 65(d).

Anderer asserts that the February injunction was not sufficiently clear.  The injunction provided that Anderer "shall not transfer the Trademark or Domain

- 58 -

Name or any interest therein of any kind or any obligation secured thereby except in connection with a foreclosure based on the Debtor In Possession (DIP) Financing."  App.-1439.  He wrongly claims the injunction did not fairly notify him that his *subsequent* transfer of the Mark/Domain to Dermagen would violate the injunction.  OB 49-51.

Rule 65(d) requires an injunction to "describe in reasonable detail … the act or acts restrained or required."  The key word is "reasonable."  "There is a limit to what words can convey.... The right to seek clarification or modification of the injunction provides assurance, if any be sought, that proposed conduct is not proscribed."  *Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1243-44 (10th Cir. 2001) (quoting *Reliance Ins. Co. v. Mast Constr. Co.,* 159 F.3d 1311, 1316-17 (10th Cir. 1998) (further citation omitted)).

Anderer asserts an injunction must identify "precisely" what the enjoined party must do or refrain from doing.  OB 49.  But "[a] temporary injunction is intended to be temporary, to meet the exigencies of the situation, and necessarily at times lacks the degree of precision which may be required on final decree." *Pierce,* 253 F.3d at 1244 (citation omitted).  A preliminary injunction is insufficiently definite only when "the delineation of the proscribed activity lacks particularity or when containing only an abstract conclusion of law, not an operative command capable of enforcement."  *Pierce*, 253 F.3d at 1244 (citation

- 59 -

omitted).  In contrast, Anderer's cited case, *Williams v. United States,* 402 F.2d 47 (10th Cir. 1967), concerns a permanent injunction.  In any case, both standards are met.

The injunction here provided more than reasonable detail, and its terms are "read in light of the injunctive order as a whole."  *Reliance,* 159 F.3d at 1316; *see Haskell v. Kan. Natural Gas Co.,* 224 U.S. 217, 223 (1912) ( "[T]he decree must be read in view of the issues made and the relief sought and granted.").  Anderer was prohibited from any transfer of the Mark/Domain, with a single exception:  "in connection with a foreclosure based on" the DIP financing.  The order said its purpose was to "stanch[] the evolution of innovative transfer means, and avoid[] loss of control of the Mark/Domain" and prevent frustration of "4EverYoung's ability to receive its contracted right to purchase the Mark/Domain." App.-1422, 1423.

This language notified Anderer of what was prohibited.  A reasonable person would understand that transfers were prohibited and the specific exception for a transfer "in connection with" foreclosure did not apply to a separate transaction, after and unrelated to foreclosure, especially one that would put the Domain Name subject to that foreclosure out of the country and outside the court's control and frustrate 4EverYoung's right to them, the exact harm the order said it was trying to prevent.  If Anderer hoped his method might fall within that narrow

- 60 -

exception, he could "seek clarification or modification of the injunction" or obtain

"assurance … that proposed conduct is not proscribed." *Pierce*, 253 F.3d at 1243-

44.

### E.     The District Court Did Not Abuse Its Discretion In Holding Anderer In Contempt of The January Injunction.

The Court lacks jurisdiction to review the order of contempt of the January

injunction.  Part V.A.4.  In case the Court disagrees, we address the merits in an

abundance of caution.

The injunction provides that DPLLC, "its officers, agents, servants,

employees, and attorneys, and those acting in concert, with them" (collectively, the

'Enjoined Parties') shall not transfer the trademark and domain name to anyone

other than 4EverYoung."  App.-818.  Anderer asserts that he was acting

independently of DPLLC, not in concert with it, and that the injunction does not

clearly cover efforts of secured parties to foreclose.  OB 58-60.  Wrong on both

counts.

"[A]lter ego, collusion, or identity of interest" are all "sufficient to make a

restraining order binding upon a nonparty who has actual notice of the order."

*Reliance Ins. Co. v. Mast Constr. Co.,* 84 F.3d 372, 377 (10th Cir. 1996).  It is also

sufficient if the nonparty aids and abets the violation or is legally identified with

the party.  *Id.*

- 61 -

Here, the district court found that "[c]learly Anderer was acting in concert with DPLLC." App.-1725. Anderer's bare assertion that he acted independently (OB 58-59) is wholly unsupported by the record. He does not come to grips with the court's unchallenged factual findings, which easily establish that he acted in "collusion" with DPLLC, had "identity of interest" with DPLLC and "aided" DPLLC. Among other things, Anderer "exercised through DPLLC and on his own" a strategy "to ensure that 4EverYoung has every barrier possible to its purchase of the Mark/Domain if that is eventually what 4EverYoung is entitled to"; Anderer is DPLLC's sole funder and has been an investor, part owner, and director of DPLLC; he is consulted on every major decision and DPLLC has only ever made one decision contrary to his direction; he alone financed DPLLC's bankruptcy, which the bankruptcy judge found to be a strategy to avoid the results of the district-court lawsuit; even after he resigned, Anderer "effectuated" his strategy "through Derma Pen [DPLLC]"; his and DPLLC's attorneys engaged in a "joint and collective effort" in this litigation against 4EverYoung. App.-1724. Indeed, Anderer took the security interest in DPLLC's assets with the intention to prevent 4EverYoung from obtaining the Mark/Domain. App.-1724.

Thus, Anderer was subject to the district court's order because he undisputedly had actual notice of the injunction and was found by the district court to have acted in concert with DPLLC in violating that injunction. *ClearOne*

- 62 -

*Commc'ns., Inc. v. Bowers,* 643 F.3d 735, 776 (10th Cir. 2011).

Citing nothing, Anderer also asserts that the injunction is not sufficiently specific to support contempt.  OB 60.  But the injunction could not be clearer: DPLLC and those acting in concert with it "shall not transfer the trademark and domain name to anyone other than 4EverYoung."  App.-818.  Anderer acted in concert with DPLLC to transfer the Mark/Domain.  Thus he violated the injunction.  (He does not challenge the district court's finding that he knew about the injunction.  App.-1716, 1720-21.)  Anderer says the injunction does not "purport to prevent secured parties from engaging in efforts to foreclose their valid interests in the Assets."  OB 60.  But the injunction clearly covers anyone acting in concert with DPLLC (including Anderer) and transfers (including Anderer's).  The court was not required to call out Anderer's specific method of transfer and say it was prohibited.  *McComb v. Jacksonville Paper Co.,* 336 U.S. 187, 192-93 (1949) (defendants cannot claim "immunity from civil contempt because the plan or scheme which they adopted was not specifically enjoined"; to avoid cat-and-mouse game of enjoining specific conduct only to have defendant invent ways around it, court should impose "decrees that are not so narrow as to invite easy evasion").

### F.  <u>The District Court Did Not Abuse Its Discretion In Holding Anderer In Contempt of The February Injunction.</u>

Anderer asserts that he did not violate the February injunction, mostly

- 63 -

repeating his argument that the injunction was insufficiently definite.  These assertions are refuted above.  Part V.D.2.e.

Anderer's argument that ambiguity is construed in his favor (OB 57) fares no better.  While genuine ambiguities are construed favorably to the person charged with contempt, that does not mean "that where an injunction does give fair warning of the acts that it forbids, it can be avoided on merely technical grounds." *Alley v. U.S. Dept. of Health & Human Servs.,* 590 F.3d 1195, 1207 (11th Cir. 2009) (citation omitted).  Where it is clear what the order seeks to prevent, parties cannot engage in "overly literal or hypertechnical reading of an injunction in order to slip the restraints." *Id.* at 1205 (citation omitted); *e.g., Schering Corp. v. Ill. Antibiotics Co.,* 62 F.3d 903, 905-07 (7th Cir. 1995) (where injunction prohibited selling antibiotic "solution," selling it as powder was contempt); *United States v. Christie Indus., Inc.,* 465 F.2d 1002, 1006-07 (3d Cir. 1972) (where injunction prohibited shipping firecracker-assembly kits, breaking kits into components and shipping them separately was contempt); *Abbott Labs. v. Unlimited Beverages, Inc.,* 218 F.3d 1238, 1241-42 (11th Cir. 2000).

Here, the injunction's stated purpose was to prevent the Mark/Domain from being transferred outside the court's control and frustrating 4EverYoung's right to them.  The exception for transfers in connection with foreclosure is read in light of

- 64 -

that statement.  *Reliance,* 159 F.3d at 1316; *Haskell,* 224 U.S. at 223.  No reasonable person could have thought the order permitted a transfer unrelated to the foreclosure, unnecessary to it, to accomplish exactly what the injunction sought to prevent.

## VI.    <u>CONCLUSION</u>

The February injunction should be affirmed.  The appeal should otherwise be dismissed.  Alternatively, the other orders should be affirmed.

## VII.   <u>STATEMENT RE ORAL ARGUMENT</u>

4EverYoung requests oral argument.  Oral argument would assist the Court because the case presents a multitude of asserted issues on an extensive factual record.

Dated:  May 16, 2016                    MORGAN, LEWIS & BOCKIUS LLP

By s/ Robert A. Brundage
Robert A. Brundage
Morgan, Lewis & Bockius LLP
One Market, Spear Street Tower
San Francisco, CA 94105
Telephone 415.442.1000
robert.brundage@morganlewis.com

Attorneys for Appellees
4EverYoung Ltd., Equipped
International Pty. Ltd., Biosoft
(Aust) Pty Limited, and Stene
Marshall

- 65 -

DB2/ 30132001.37

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App.-P. 32(a)(7)(B) because this brief contains 13,987 words, excluding the parts of the brief exempted by Fed. R. App.-P. 32(a)(7)(B)(iii) and Tenth Circuit Rule 32(b).

This brief complies with the typeface requirements of Fed. R. App.-P. 32(a)(5) and the type style requirements of Fed. R. App.-P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in a 14-point Times New Roman font.

I certify that the information on this form is true and correct to the best of my knowledge and belief formed after a reasonable inquiry.


May 16, 2016                          s/ Robert A. Brundage
                                      Robert A. Brundage
                                      Morgan, Lewis & Bockius LLP
                                      One Market, Spear Street Tower
                                      San Francisco, CA 94105
                                      Telephone 415.442.1000
                                      robert.brundage@morganlewis.com

DB2/ 30132001.37

**CERTIFICATE OF DIGITAL SUBMISSION/PRIVACY REDACTIONS**

I hereby certify that the foregoing, as submitted in digital form via this

Court's CM/ECF system, is an exact copy of any written document required to be

filed with the Clerk and has been scanned for viruses with McAfee VirusScan

Enterprise + Antispyware Enterprise version 8.8 (updated May 16, 2016) and,

according to the program, is free of viruses.  I also certify that any required privacy

redactions have been made.

DATED May 16, 2016.

<u>s/ Robert A. Brundage</u>
Robert A. Brundage
Morgan, Lewis & Bockius LLP
One Market, Spear Street Tower
San Francisco, CA 94105
Telephone 415.442.1000
robert.brundage@morganlewis.com

**CERTIFICATE OF SERVICE**

I hereby certify that on May 16, 2016, I caused the foregoing Appellees' Response To Appellant Anderer's Motion For Further Extension Of Brief And Appendix Deadline to be filed via the CM/ECF System, which electronically served the following:

Mr. Clemens A. Landau, clandau@zjbappeals.com

Mr. Douglas R. Short, douglasrshort@gmail.com

Mr. Michael D. Zimmerman, mzimmerman@zjbappeals.com

Ms. Carla B. Oakley, coakley@morganlewis.com

<u>s/ Robert A. Brundage</u>

Robert A. Brundage

Morgan, Lewis & Bockius LLP

One Market, Spear Street Tower

San Francisco, CA 94105

Telephone 415.442.1000

robert.brundage@morganlewis.com

- 69 -